# Exhibit E

Affidavit of Jonathan L. Arden, MD (May 14, 2021)

ELECTRONICALLY FILED - 2021 May 17 2:49 PM - RICHLAND - COMMON PLEAS - CASE#2021CP4002306

## Affidavit of Jonathan L. Arden, MD

I, Jonathan L. Arden, do hereby state the following of my own knowledge and under penalty of perjury:

1.    I have practiced in the field of forensic pathology for more than 35 years. After receiving my MD degree from the University of Michigan in 1980, I completed training in anatomic pathology at the New York University Medical Center (1980-1983) and in forensic pathology at the Office of the Chief Medical Examiner for the State of Maryland (1983-1984). I have been certified in both anatomic and forensic pathology by the American Board of Pathology since 1985. I am currently licensed to practice medicine in five states. I spent most of my career as a government-employed medical examiner, including nine years with the Office of Chief Medical Examiner for the City of New York where I finished as First Deputy Chief Medical Examiner, and more than five years as the Chief Medical Examiner of Washington, DC. I am currently President of Arden Forensics, PC, a consulting practice in forensic pathology and medicine, and I hold a part-time appointment as a Forensic Pathologist in the Office of the Chief Medical Examiner for the State of West Virginia.

2.    I have testified as an expert witness in various state and federal courts, as well as in grand juries and depositions, a total of more than 900 times. My fees are not contingent upon the outcome of any case in which I consult.

### Materials Reviewed

3.    In preparing this affidavit, I reviewed the following materials:

a.    Autopsy Reports from a total of 80 electric chair executions in five different states, along with diagrams, notes, Toxicology Reports, some photographs, and other supporting documents. The autopsies I reviewed were for the following people:

    i.      John Lewis Evans, III (AL 1983)

    ii.     John Smith (GA 1983)

    iii.    Carl Shriner (FL 1984)

    iv.     Ernest Dobbert (FL 1984)

    v.      Alpha Stephens (GA 1984)

    vi.     Richard Adams (FL 1984)

    vii.    David Washington (FL 1984)

    viii.   James Henry (FL 1984)

    ix.     Timothy Palmes (FL 1984)

1

ELECTRONICALLY FILED - 2021 May 17 2:49 PM - RICHLAND - COMMON PLEAS - CASE#2021CP4002306

x.          Anthony Antone (FL 1984)

xi.         Arthur Goode (FL 1984))

xii.        Ivon Stanley (GA 1984))

xiii.       Marvin Francois (FL 1985)

xiv.        James David Raulerson (FL 1985)

xv.         Johnny Paul Witt (FL 1985)

xvi.        Roosevelt Greene (GA 1985)

xvii.       John Young (GA 1985)

xviii.      Jerome Bowden (GA 1986)

xix.        Arthur Lee Jones (AL 1986)

xx.         David Funchess (FL 1986)

xxi.        Ronald Straight (FL 1986)

xxii.       Daniel Thomas (FL 1986)

xxiii.      William Tucker (GA 1987)

xxiv.       Wayne Ritter (AL 1987)

xxv.        Beauford White (FL 1987)

xxvi.       Timothy McCorquodale (GA 1987)

xxvii.      Joseph Mulligan (GA 1987)

xxviii.     William Mitchell (GA 1987)

xxix.       Willie Darden (FL 1988)

xxx.        Jeffrey Daugherty (FL 1988)

xxxi.       Henry Willis (GA 1989)

xxxii.      Herbert Lee Richardson (AL 1989)

xxxiii.     Aubrey Adams (FL 1989)

xxxiv.      Ted Bundy (FL 1989)

ELECTRONICALLY FILED - 2021 May 17 2:49 PM - RICHLAND - COMMON PLEAS - CASE#2021CP4002306

xxxv.       Horace Dunkin (AL 1989)

xxxvi.      Jesse Tafero (FL 1990)

xxxvii.     John Swindler (AR 1990))

xxxviii.    Anthony Bertolotti (FL 1990)

xxxix.      James Hamblen (FL 1990)

xl.         Raymond Clark (FL 1990)

xli.        Roy Harich (FL 1991)

xlii.       Robert Francis (FL 1991)

xliii.      Larry Heath (AL 1992)

xliv.       Cornelius Singleton (AL 1992)

xlv.        Nollie Martin (FL 1992)

xlvi.       Edward Kennedy (FL 1992)

xlvii.      Robert Henderson (FL 1993)

xlviii.     Larry Johnson (FL 1993)

xlix.       Michael Durocher (FL 1993)

l.          Roy Stewart (FL 1994)

li.         Willie Clisby (AL 1995)

lii.        Bernard Bolander (FL 1995)

liii.       Varnell Weeks (AL 1995)

liv.        Jerry White (FL 1995)

lv.         Phillip Atkins (FL 1995)

lvi.        Nicholas Ingram (GA 1995)

lvii.       Ellis Felker (GA 1996)

lviii.      Larry Lonchar (GA 1996)

lix.        John Bush (FL 1996)

3

ELECTRONICALLY FILED - 2021 May 17 2:49 PM - RICHLAND - COMMON PLEAS - CASE#2021CP4002306

lx.        John Mills (FL 1996)

lxi.       Harold McQueen (KY 1997)

lxii.      Billy Waldrop (AL 1997)

lxiii.     Pedro Medina (FL 1997)

lxiv.      Henry Hays (AL 1997)

lxv.       Edward Horsley (AL 1997)

lxvi.      Walter Hill (AL 1997)

lxvii.     David Cargill (GA 1998)

lxviii.    Gerald Stano (FL 1998)

lxix.      Judias Buenoano (FL 1998)

lxx.       Leo Jones (FL 1998)

lxxi.      Daniel Remeta (FL 1998)

lxxii.     Allen Davis (FL 1999)

lxxiii.    Brad Baldwin (AL 1999)

lxxiv.     Victor Kennedy (AL 1999)

lxxv.      Freddie Wright (AL 2000)

lxxvi.     Pernell Ford (AL 2000)

lxxvii.    David Ray Duren (AL 2000)

lxxviii.   Robert Lee Tarver (AL 2000)

lxxix.     Linda Block (AL 2002)

lxxx.      Daryl Holton (TN 2007)

b.    A Master Chart prepared by attorneys from Justice 360 summarizing the autopsy findings;

c.    Media articles about the 80 electric chair executions referenced above;

d.    South Carolina Department of Corrections (SCDC) Execution Procedures, document number SK-22.02, issued on May 1, 2002, the most recently available

4

ELECTRONICALLY FILED - 2021 May 17 2:49 PM - RICHLAND - COMMON PLEAS - CASE#2021CP4002306

electrocution protocol for South Carolina; and

e.      An affidavit from John P. Wikswo, Jr., PhD, dated April 27, 2021.

f.      I have also relied upon my education, training, knowledge and experience as a physician, forensic pathologist, and a medical examiner.

## Synopsis of Pertinent Facts

4.      In summary, review of the Autopsy Reports demonstrates that the prisoners executed by the electric chair generally had similar autopsy findings, including:

a.      Burn rings about the heads, corresponding to the ring-shaped head electrodes;

b.      Burns to the lower extremities, often corresponding to the leg electrodes;

c.      Burns elsewhere on the bodies, notably including the scrotum and thighs;

d.      Epidural hematomas;

e.      Brain swelling; and

f.      Bruising &/or abrasions of soft tissues, particularly associated with straps/restraint devices on the electric chairs.

5.      Attached to this affidavit are appendices containing autopsy photographs showing some of these findings.

## Analysis and Opinions

6.      Passage of electrical current through the human body can cause death primarily through three mechanisms: (1) interruption of electrical functioning of the brain, (2) interruption of electrical functioning of the heart, or (3) thermal damage (e.g., burning, charring, and cooking) to bodily tissues.

a.      To interrupt electrical functioning of the brain or heart, sufficient current must flow in a path through the brain or heart, respectively. Current flowing through any part of the body will encounter electrical resistance of the tissues, which varies according to the type of tissue (e.g., skin versus blood contained in vessels), and according to the method of conduction between the current source and the body (e.g., direct contact to skin, use of a conducting material such as the sponges under the electric chair electrodes, or even arcing of current across space into the body).

b.      Current flowing through a resistance will generate heat, which can burn or char tissue directly, and it can transmit heat that cooks tissue. *See* Appendices.

7.      The electric chairs employed in the executions I reviewed have a ring electrode about the top of the head, and a leg electrode attached at a calf, such that the current path will flow

5

ELECTRONICALLY FILED - 2021 May 17 2:49 PM - RICHLAND - COMMON PLEAS - CASE#2021CP4002306

between them. The 2002 South Carolina protocol I reviewed for the electric chair also has a ring electrode around the head and a leg electrode attached at a calf.

a.     No scientific measurements or simulations have been offered to demonstrate that sufficient current flows from the ring electrode directly through the brain to interrupt its electrical functioning immediately upon application of the current that the person is, definitively, rendered unconscious immediately.

b.     As is explained in greater detail in Dr. Wikswo's affidavit, the resistance to current is less in the skin and soft tissues as compared to the skull bone encasing the brain, so much of the current would be expected to flow from the scalp to the leg by the superficial soft tissues.

8.     Current electric chair protocols available for review do not attempt to direct current in a manner that would preferentially interrupt electrical functioning, and thus contraction, of the heart.  Furthermore, even if the electric chair were to cause immediate heart stoppage upon application of the current, the person would remain conscious for at least 15 seconds after cessation of cardiac activity because blood remaining in the brain continues to provide oxygen to the brain (even in the absence of circulation).

9.     Thermal burns were present in all the autopsies I reviewed, including severe burns with charring of the tissues. *See* Appendices.

a.     Although the anatomical features of burns as seen at autopsy do not permit distinguishing burns that occurred before, versus after death, it is unreasonable to assume that all the burns occurred post-mortem as there have been documented instances in which a person remains alive after the application of the current yet suffers severe burns. To a reasonable degree of medical certainty, at least some of the burning occurs during the process of current flow before death.

b.     Many of the autopsies revealed epidural hemorrhages, which is bleeding between the dura (i.e., the membrane that lines the cranial cavity) and the inner surface of the skull bone. Although epidural hemorrhages may result from blunt head trauma, most often in association with skull fractures, they also are created as post-mortem artifacts of heat exposure, e.g., seen in victims of house fires. The epidural hemorrhages seen in the electric chair executions are indicative of the cooking effect of the heat produced by the electrical current.

10.     Several of the decedents had brain swelling observed and described at autopsy.

a.     Brain swelling is normally a vital process that takes significant time to develop (commonly on the order of hours). I see no likely mechanism for the creation of brain swelling in these decedents other than it resulting from thermal damage from the heat caused by the passage of current, i.e., another cooking effect of the electric chair on the bodies.

b.     Brain swelling does not occur after death, so this is another example of damage to a vital organ caused during life by the application of electrical current to the

ELECTRONICALLY FILED - 2021 May 17 2:49 PM - RICHLAND - COMMON PLEAS - CASE#2021CP4002306

body.

11. Electric chair protocols, including South Carolina's 2002 protocol, call for moist sponges between the electrodes and the underlying skin, ostensibly to lessen resistance and to promote current flow. However, burning at the electrode sites was nearly universal in the autopsies I reviewed, which indicates that significant resistance at the skin was present, rather than efficient conduction of the current. *See* Appendices.

12. The electric chair protocols have substantial similarities across various states and across time. The South Carolina protocol that is available is sufficiently similar to the protocols used to execute the people whose autopsies I reviewed to expect that South Carolina's electric chair executions would cause similar autopsy findings. I did ask for autopsies of persons executed in South Carolina by electrocution, but I was informed that the South Carolina Department of Corrections refused to provide them.

13. As mentioned above, the protocols have no scientific basis, other than the generality that passage of electrical current through the body may cause fatal electrocution. The assertion that a person is rendered immediately unconscious by the current flowing from the head ring electrode is nothing more than an assumption.

14. The autopsies demonstrated that all the executed people sustained significant burning and charring, as well as cooking of tissues, which would be excruciatingly painful, even if they only remained conscious during current application for a few seconds. *See* Appendices. It is also notable that multiple electrocuted prisoners had burns of the thighs and scrotum, which would be extremely painful.

15. If the mechanism of heart stoppage is presumed to be operative in execution by electric chair, then the states must concede that the person would remain conscious for a minimum of about 15 seconds after application of current, during which time the person would similarly experience excruciating pain.

16. Some of the protocols that use sequential applications of current in the electric chair are nonsensical and inherently contradictory to the stated aim of "instantaneous" or "painless" death by electrocution.

a. If the first application of current should be sufficient to cause death, then there is no scientific or medical basis for subsequent current applications, unless the state simply does not know how much current and how much time is necessary to cause death.

b. To that point, multiple executions by electric chair have resulted in a person who still had a heartbeat, i.e., was not dead, after the first jolt of electric current, indicating that the person did not experience instant death. For example, prisoners have continued to breathe after the first jolt, showing that the techniques and protocols claiming an instant death are baseless and at least inconsistent in achieving their intended goal.

c. Similarly, the fact that at least one of these people (Jerry White) was observed to have screamed upon application of the current demonstrates that the assumption that unconsciousness ensues immediately is unfounded. *See* Ron Word, *Inmate*

7

ELECTRONICALLY FILED - 2021 May 17 2:49 PM - RICHLAND - COMMON PLEAS - CASE#2021CP4002306

*Dies in Electric Chair for Robbery Slaying*, ASSOCIATED PRESS (December 4, 1995).

17.    In summary, if the electric chair causes death by means of heart stoppage, or by cooking of tissues and vital organs, the prisoner will experience excruciating conscious pain and suffering.  If the lethal mechanism is electrical interruption of brain functioning, then conscious pain and suffering during the process cannot be reasonably excluded.

18.    All opinions are expressed with reasonable medical certainty.  I reserve the right to amend any statements or opinions if presented with additional significant information, as well as the right to rebut opinions expressed within my areas of expertise.

\*\*\*

I hereby declare, under penalty of perjury, that the foregoing is true and correct to the best of my knowledge and belief.

Date: ____5/14/2021____

Signed: _____

Sworn and subscribed before me this 14ᵗʰ day of ____May____, 2021.

Notary Public: _____

My Commission Expires: _____

PAUL H. MINOFF
MY COMMISSION # GG 974830
EXPIRES: April 5, 2024
Bonded Thru Notary Public Underwriters

8