UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 4:17-CR-866-RBH |
| | ) | |
| BRANDON COUNCIL, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

**DEFENDANT'S REPLY IN SUPPORT OF MOTION
TO VACATE SENTENCES OF DEATH BY ELECTROCUTION**

By federal statute and this Court's judgment, Defendant Brandon

Council stands sentenced to die in the manner prescribed by South

Carolina.  A recent state statute, enacted while his appeal is pending,

substituted electrocution for lethal injection as the default method of

execution; furthermore, under South Carolina law, it is the only one

available now and for the indefinite future.  But electrocution is an

intensely painful, violent, and mutilating form of capital punishment.

Because it is barbaric and violates basic human dignity, it has been

universally reviled and abandoned elsewhere.  Accordingly, Council has

moved to vacate his sentences of death by electrocution because the federal

1

statute that incorporates South Carolina's manner of execution violates his constitutional rights, including his right against *ex post facto* punishment. (DE #923)

Council now submits this reply to the government's opposition to his motion (DE #925).

**A.  Council's motion is ripe.**

1.  While the government acknowledges that electrocution raises "weighty constitutional questions" (DE #925 at 3), it proceeds to sidestep them.  Instead, the government urges the Court to summarily deny Council's motion because, it insists, he has brought his claims in the wrong forum and before they are ripe.  According to the government, he must wait until his execution is actually scheduled and then file a habeas corpus action under 28 U.S.C. § 2241.  (*Id.* at 1, 4-6 & n.1).

2.  The government is incorrect.  As discussed in Council's motion (DE #923 at 11-12) but ignored by the government, he is challenging the legality of his sentence and the statute under which it was imposed.  *See also United States v. Tipton*, 90 F.3d 861, 903 (4th Cir. 1996) (considering merits of similar claim on direct appeal); DE #923 at 11 (citing other cases). Not how the Bureau of Prisons is implementing a lawful sentence, which might have to be addressed in a § 2241 action.

3. The government invokes the general principle that a claim is not "ripe" if its existence "rests upon contingent future events that may not occur" or on "future uncertainties." (DE #925 at 5-6) (citations and internal quotations omitted). But, again, Council's claims target not a "hypothetical eventuality" (*id.* at 3), but his actual sentence as prescribed by existing statutes and imposed by the Court. The government cites no authority for using the ripeness doctrine to avoid such a claim.[1]

4. On the contrary, circuit courts routinely consider challenges to other kinds of sentences whose implementation is "contingent" on future events. That includes, for example, conditions of supervised release that will follow only if the defendant successfully completes a lengthy prison term and other "uncertainties" do not intervene. *See, e.g., United States v. Mixwell*, 806 Fed. Appx. 180, 184-86 (4th Cir. 2020).

5. The government focuses on the supposed "uncertainties" over whether and when Council will be scheduled for execution given his

---

[1] In *Texas v . United States*, 523 U.S. 296 (1998), one of two cases cited by the government, the Supreme Court held that a voting-rights challenge involving a "sanction" that had not yet been "ordered" was unripe. *Id.* at 300 (citation and internal quotation omitted). In the other, *Miller v. Brown*, 462 F.3d 312 (4th Cir. 2006), the Fourth Circuit found that a similar challenge involving a voting law was ripe despite uncertainty over whether any candidate would file for office and be affected by the law. Id. at 319.

pending direct appeal to the Fourth Circuit and a recently announced internal review by the Department of Justice of its execution policies (including whether they risk "unnecessary pain and suffering"). (DE #925 at 5, *citing* Merrick Garland, *Memorandum on Federal Executions Pending Review of Policies and Procedures* (July 1, 2021)). But, here too, the government cites no authority for the odd theory that a defendant's challenge to the legality of his sentence can be summarily denied because some other court might later invalidate it on a different ground or because the government itself declares that it is studying the matter.[2]

6.   The government also speculates that lethal injection, while "at present unavailable" as a method of execution in South Carolina, might be reinstated in practice before Council's execution is scheduled. (DE #925 at 7-8). It is the government, not Council, that misapprehends South Carolina and federal law, by simply disregarding several key points discussed in Council's motion. (*See* DE #923 at 20-22, 26-28, #923-2, #923-3). First, electrocution is the default manner of execution in South Carolina, and thus the one incorporated into his sentence of death via the federal statute and the Court's judgment. That requires the Court to consider his challenges to

---

[2] It also appears that electrocution is not among the issues that the Attorney General has charged the Department of Justice to study. *See id.*

4

electrocution, especially his *ex post facto* claim, notwithstanding the state statute's provision for electing an alternative.  Second, under that statute, a prisoner must be executed by electrocution if the State Department of Corrections formally certifies an alternative is unavailable, which it has done.  Third, the State Department of Corrections has further declared (and the State Supreme Court has accepted) that for years it has failed to obtain lethal-injection drugs, does not expect to be able to do so in the future, and apparently has stopped trying.[3]  And fourth, because the federal statute mandates a system under which federal prisoners are executed in the same manner as state ones, it would not matter whether the Federal Bureau of Prisons could independently access lethal-injection drugs.

7.    Finally, the government discredits its own ripeness argument, in

---

[3] While the government says this "is currently being litigated in the State court system" (DE #925 at 5), both the trial-court and state-supreme-court cases it cites (which Council's original motion also discussed), seem to have gone dormant and may well remain so, given that the two prisoners who initiated both cases have had their execution dates lifted.  And if there were a prospect that the state-court litigation could clarify the issues, that might be a reason to hold Council's motion in abeyance, not summarily deny it.  *Cf. Suggs v. Brannon*, 804 F.2d 274, 280 (4th Cir. 1986) ("a federal court is not precluded, in the exercise of its discretion, from staying proceedings in the action before it pending a decision by the state court, with a view to avoiding wasteful duplication of judicial resources and having the benefit of the state court's views") (citation and internal quotation omitted).

two ways.  First by maintaining, in the same pleading, that Council has also acted *too late* because he could have challenged electrocution in his original Rule 33 motion filed shortly after he was sentenced.  (DE #925 at 6).  *See* Section B, *post* (disproving that argument).  And second, by having repeatedly castigated other prisoners, including several it ultimately succeeded in putting to death, for waiting until dates were set to contest their method of execution rather than doing so much earlier.  (*See* ECF #923 at 12).  Indeed, in a case challenging the government's previous execution protocol as cruel and unusual punishment, the government repeatedly argued that this claim should be dismissed as untimely because the condemned prisoners could have raised it *when they were sentenced or in their direct appeals.  Roane v. Gonzales*, No. 1:05-cv-2337, DE #13 at 22-23, #60 at 11-16, #160 at 12-18 (D.D.C.); *see also* DE #923 at 12-13.

**B.    Council's motion is not tardy.**

8.    It is true, as the government notes, that the South Carolina execution statute in effect when Council was sentenced, before the recent amendment, included electrocution.  But that prior version did so only as an alternative to lethal injection that a prisoner could affirmatively elect, rather than as the default (and, indeed, only available) method, as it currently stands under the new state law.  Therefore, Council had no legal

basis for raising the issues involving electrocution presented in his current motion, including his *ex post facto,* cruel and unusual punishment, and equal protection claims.[4] (*See* DE #923, *citing Stewart v. LaGrand*, 526 U.S. 115, 119 (1999); *Bryan v. Moore*, 528 U.S. 1133 (2000)).

9.    The government also disregards Council's discussion of why he should receive an extension of time under Federal Rule of Criminal Procedure 45 for the Court to consider the current motion under Rule 33(b)(2) (*see* DE #923 at 8-9).  The government does observe that the motion was filed two months after South Carolina enacted its new electrocution statute (DE #925 at 6), a little more than a month after the state certified electrocution is the only available execution method.  But, as Council noted, his attorneys acted expeditiously in researching the facts and law and preparing a lengthy motion with extensive supporting exhibits in

---

[4] For similar reasons, the "law of the case" doctrine does not preclude the Court from considering Council's new arguments on the anti-delegation claim that he previously raised in his original motion to vacate his death sentences, which the Court denied.  That doctrine, as described in the decision cited by the government, *United States v. Lentz*, 524 F.3d 502, 528 (4th Cir. 2008), constrains a district court from deciding an issue already resolved by the Court of Appeals in an earlier appeal in the same case, not from revisiting its own decision.  Moreover, even if the doctrine applied, the new South Carolina statute would constitute an "intervening change in the law," which is a recognized exception.  *United States v. Platero*, 72 F.3d 806, 810-11 (10th Cir. 1995); *see, e.g., Brooks Run Coal Co. v. Waggy*, 813 F.2d 400 (4th Cir. 1986) (Table), 1986 WL 18586, at *2 (4th Cir. 1986).

that relatively short intervening period. Moreover, the government is not prejudiced, especially since briefing is not scheduled to begin in the Fourth Circuit for two months. (*See* DE #923 at 9).

10. As for Council's alternative contention that the Court consider the motion as one based on newly discovered evidence under Rule 33(b)(1), for which no extension of time would even be required, the government cites decisions holding that "new legal theories" do not qualify. (DE #925 at 6). But that is hardly the same as a newly amended statute that effectively alters the defendant's sentence, the situation here.

**C.    The government has waived any merits defense.**

11. Experienced prosecutors, like those assigned to this case, know that arguments not raised on behalf of the government may be deemed waived. They also understand the need to argue in the alternative, and thus that, while their principal grounds for opposing Council's motion are procedural, now is the time if they wish to contest the merits, *i.e.*, to deny that electrocution is inhumane, as detailed in that motion and supporting exhibits. (*See* DE #923 at 13-36; #923-4, #923-5, #923-6, #923-7, #923-8, #923-9).

12. But the prosecutors conspicuously have chosen not to do so in the government's ten-page opposition in which they carefully lay out other,

8

procedural defenses.  Instead, in a footnote tacked on to the end, the government merely observes, "in the interest of completeness," that this Court declined to preliminarily enjoin two state prisoners' executions because they had not shown a likelihood of success on an Eighth Amendment challenge to electrocution.  (DE #925 at 8 n.2).  Perhaps the prosecutors here do not wish to attach the Department of Justice's name to a pleading defending electrocution, especially given the Attorney General's publicly declared policy against "unnecessary pain and suffering" in federal executions.  *See* Garland Memorandum, *supra*.  Whatever the reason, this vague, passing footnote reference to the Court's decision from a different case in a different posture does not suffice to preserve a defense on the merits to Council's thoroughly pled claims.[5]  Thus, the government has waived any such argument.  *See, e.g., John Wyeth & Bro., Ltd. v. Cigna Intern. Corp.*, 119 F.3d 1070, 1076 n.6 (3rd Cir. 1997) ("arguments raised in passing  (such as, in a footnote), but not squarely argued, are considered waived").

---

[5] The government's footnote does not refer, even obliquely, to Council's *ex post facto* claim, perhaps the most substantial in his motion and one not addressed and apparently never raised in the state prisoners' case in this Court.  Accordingly, the government has certainly waived any merits defense on that claim.

**D.  Conclusion**

Accordingly, for the reasons presented in his original motion and this reply, the Court should grant the motion, declare that 18 U.S.C. § 3596(a) is unconstitutional on its face and as applied to Council, vacate his sentences of death by electrocution, and resentence him non-capitally.

Respectfully submitted,

/s/ Barry J. Fisher
Barry J. Fisher
Office of the Federal Defender, NDNY
39 North Pearl Street, 5th Floor
Albany, NY 12207
(518) 650-9031 tel.
(518) 436-1780 fax
barry.fisher@fd.org

Lisa Lorish
Office of the Federal Defender, WDVA
401 E. Market Street, Suite 106
Charlottesville, VA 22902
(434) 220-3388 tel.
(434) 220-3390 fax
lisa.lorish@fd.org

*Counsel for Defendant Brandon Council*

## CERTIFICATE OF SERVICE

       I certify that the foregoing was filed electronically through the ECF system and notice sent to counsel of record for all parties

                        s/ Barry J. Fisher