| | | |
|---|---|---|
| United States of America, | ) | Criminal No.: 4:17-cr-00866-RBH |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| Brandon Michael Council, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

On December 30, 2019, Defendant Brandon Michael Council filed a notice of appeal in this capital case. ECF No. 872. The appeal remains pending. On July 21, 2021, Defendant filed a "Motion to Vacate Sentences of Death by Electrocution" under Federal Rule of Criminal Procedure 33. ECF No. 923. On August 5, 2021, the Government filed a response in opposition to the motion, and on August 13, 2021, Defendant filed a reply. ECF Nos. 925 & 927. The Court denies Defendant's motion for the reasons herein.[1]

## **Background**

On September 24, 2019, a jury convicted Defendant of two capital offenses: bank robbery resulting in death, in violation of 18 U.S.C. § 2113(a) and (e), and use of a firearm during and in relation to a crime of violence and causing death in such a manner to constitute murder, in violation of 18 U.S.C. § 924(c) and (j). ECF No. 819. The jury subsequently determined Defendant should receive death sentences for both convictions, and on October 3, 2019, the Court imposed the death sentences under the Federal Death Penalty Act ("FDPA").[2] ECF Nos. 856, 857, & 860. Judgment was entered on October 7, 2019; the judgment provides in relevant part:

---

[1]     The Court decides the motion without a hearing pursuant to Local Criminal Rule 12.06 (D.S.C.).

[2]     18 U.S.C. §§ 3591–99.

> Defendant is committed to the custody of the Attorney General until the exhaustion of the procedures for appeal of the judgment of conviction and for review of the sentences. See 18 U.S.C. Sec. 3596(a). When the sentence of death is to be implemented, the Attorney General shall release the defendant to the custody of a United States Marshal, who shall supervise the implementation of the sentence in the manner prescribed by the law of the State in which the sentence is imposed. See 18 U.S.C. Sec. 3596(a).

ECF No. 860 at p. 3.

On November 4, 2019, Defendant filed a motion seeking a new sentencing trial and/or judgment of acquittal as to his death sentences, pursuant to Federal Rules of Criminal Procedure 29(c) and 33(b)(2).[3] ECF No. 866. He argued in part that 18 U.S.C. § 3596(a)[4] violated the nondelegation doctrine. *Id.* at pp. 2, 5–8. The Court denied the motion on December 17, 2019, and Defendant filed a notice of appeal on December 30, 2019. ECF Nos. 869 & 872. Defendant's direct appeal remains pending, with his opening brief currently due October 14, 2021. *See United States v. Council*, No. 20-1, at Doc. No. 34 (4th Cir. June 2, 2021) (briefing schedule).

On July 21, 2021, Defendant filed the instant motion under Federal Rule of Criminal Procedure

---

[3] Defendant filed the motion after the Court granted his prior, timely motion for an extension of time. ECF Nos. 862 & 865.

[4] Section 3596(a) provides:

> A person who has been sentenced to death pursuant to this chapter shall be committed to the custody of the Attorney General until exhaustion of the procedures for appeal of the judgment of conviction and for review of the sentence. When the sentence is to be implemented, the Attorney General shall release the person sentenced to death to the custody of a United States marshal, who shall supervise implementation of the sentence in the manner prescribed by the law of the State in which the sentence is imposed. If the law of the State does not provide for implementation of a sentence of death, the court shall designate another State, the law of which does provide for the implementation of a sentence of death, and the sentence shall be implemented in the latter State in the manner prescribed by such law.

18 U.S.C. § 3596(a).

33, asserting he "stands sentenced to death by electrocution" due to a May 14, 2021 amendment of South Carolina's death penalty statute. ECF No. 923 at pp. 1, 5; *see* Act. No. 43, § 1, 2021 S.C. Acts ____ (amending S.C. Code Ann. § 24–3–530).[5] Defendant again challenges the constitutionality of 18

---

[5] At the time Defendant was sentenced in October 2019, section 24–3–530 provided:

(A) A person convicted of a capital crime and having imposed upon him the sentence of death shall suffer the penalty by electrocution or, at the election of the person, lethal injection under the direction of the Director of the Department of Corrections. The election for death by electrocution or lethal injection must be made in writing fourteen days before the execution date or it is waived. If the person waives the right of election, then the penalty must be administered by lethal injection.

(B) A person convicted of a capital crime and sentenced to death by electrocution prior to the effective date of this section must be administered death by electrocution unless the person elects death by lethal injection in writing fourteen days before the execution date.

(C) If execution by lethal injection under this section is held to be unconstitutional by an appellate court of competent jurisdiction, then the manner of inflicting a death sentence must be by electrocution.

S.C. Code Ann. § 24–3–530 (effective to May 13, 2021). The statute now provides:

(A) A person convicted of a capital crime and having imposed upon him the sentence of death shall suffer the penalty by electrocution or, at the election of the convicted person, by firing squad or lethal injection, if it is available at the time of election, under the direction of the Director of the Department of Corrections. The election for death by electrocution, firing squad, or lethal injection must be made in writing fourteen days before each execution date or it is waived. If the convicted person receives a stay of execution or the execution date has passed for any reason, then the election expires and must be renewed in writing fourteen days before a new execution date. If the convicted person waives the right of election, then the penalty must be administered by electrocution.

(B) Upon receipt of the notice of execution, the Director of the Department of Corrections shall determine and certify by affidavit under penalty of perjury to the Supreme Court whether the methods provided in subsection (A) are available.

(C) A person convicted of a capital crime and sentenced to death by electrocution prior to the effective date of this section must be administered death by electrocution unless the person elects death by firing squad or lethal injection, if it is available, in writing fourteen days before the execution date.

U.S.C. § 3596(a), making *ex post facto*, Eighth Amendment, nondelegation, equal protection and due process arguments. ECF No. 923 at pp. 2, 20–42. Defendant contends that "the Court should vacate [his] sentences of death by electrocution" and that he "must be resentenced to a sentence other than death." *Id.* at pp. 42–43.

On August 5, 2021, the Government filed a response in opposition to Defendant's motion, and on August 13, 2021, Defendant filed a reply. ECF Nos. 925 & 927.

## Discussion[6]

### I.      Rule 33 May Be Inapplicable.

Initially, the Court questions whether Rule 33 is an appropriate mechanism for Defendant's challenges. The Rule's plain language contemplates "vacat[ing a] judgment *and grant[ing] a new trial*," Fed. R. Crim. P. 33(a) (emphasis added), but Defendant seeks"resentenc[ing] to a sentence other than death" or, alternatively, an evidentiary hearing on electrocution as an execution method. ECF No.

---

(D)      If execution by lethal injection under this section is determined and certified pursuant to subsection (B) to be unavailable by the Director of the Department of Corrections or is held to be unconstitutional by an appellate court of competent jurisdiction, then the manner of inflicting a death sentence must be by electrocution, unless the convicted person elects death by firing squad.

(E)      The Department of Corrections must provide written notice to a convicted person of his right to election under this section and the available methods.

(F)      The Department of Corrections shall establish protocols and procedures for carrying out executions pursuant to this section.

S.C. Code Ann. § 24–3–530 (effective May 14, 2021).

[6]      As Defendant and the Government both recognize, *see* ECF No. 923 at p. 10 & ECF No. 925 at p. 2, the Court has jurisdiction to consider the Rule 33 motion despite the pending appeal. *See United States v. Strom*, 611 F. App'x 148, 149 (4th Cir. 2015) ("A pending appeal, however, does not divest a district court of jurisdiction to entertain a motion for a new trial pursuant to Fed. R. Crim. P. 33. *United States v. Cronic*, 466 U.S. 648, 667 n.42 (1984). Instead, the district court should 'either deny the motion on its merits, or certify its intention to grant the motion to the Court of Appeals, which could then entertain a motion to remand the case.' *Id.*"); *see also Fobian v. Storage Tech. Corp.*, 164 F.3d 887, 891 (4th Cir. 1999) (summarizing the *Cronic* holding).

923 at pp. 42–43.  The Court likely lacks authority to grant such relief under Rule 33.  *See generally*

*United States v. Davis*, 679 F.3d 190, 196 (4th Cir. 2012) (recognizing a "district court's authority under

a rule" must "start with the rule's plain language" and end there absent some ambiguity).  In the capital

sentencing context, Rule 33 at most contemplates granting a new sentencing hearing before another

jury—where death would remain a potential sentence.  *See United States v. Lighty*, 616 F.3d 321, 376

n.47 (4th Cir. 2010) (indicating Rule 33 could support "a new sentencing hearing"); *see, e.g.*, *United

States v. Lee*, 274 F.3d 485, 491 (8th Cir. 2001) (involving a defendant's motion for a "new penalty

hearing" under Rule 33).  Nothing in Defendant's motion presents a basis for a plenary sentencing

hearing.

The Court raised similar concerns in its order addressing Defendant's prior motion:

> Although not raised by the Government, the Court *sua sponte* questions whether it has jurisdiction to rule on the merits of Defendant's argument, which presents a challenge to the *implementation* of his death sentences—not their validity.  It would seem that such a challenge normally would be made in a habeas corpus petition filed pursuant to 28 U.S.C. § 2241.  *See In re Vial*, 115 F.3d 1192, 1194 n.5 (4th Cir. 1997) ("[A]ttacks on the execution of a sentence are properly raised in a § 2241 petition."); *United States v. Little*, 392 F.3d 671, 679 (4th Cir. 2004) (same); *see, e.g.*, *Higgs v. United States*, 711 F. Supp. 2d 479, 556 (D. Md. 2010) (holding the defendant's challenge to 18 U.S.C. § 3596(a) had to be brought in a § 2241 action); *Jackson v. United States*, 638 F. Supp. 2d 514, 614–15 (W.D.N.C. 2009) (involving a challenge to § 3596(a) where the Government pointed out the district court "lack[ed] jurisdiction to entertain a challenge to the manner of the execution of the [p]etitioner's sentence of death [because] any such attack must occur, when ripe, in the district in which he is confined through a habeas proceeding or a civil action"); *United States v. Caro*, 2006 WL 1594185, at *3 (W.D. Va. June 2, 2006) (indicating the defendant's challenge to the execution of any potential death sentence needed to be brought in a § 2241 action), *adopted by*, 2006 WL 2987930 (W.D. Va. Oct. 17, 2006).  *However*, the Court notes that the Eleventh Circuit addressed a similar argument on the merits in the context of

a direct appeal, *see United States v. Battle*, 173 F.3d 1343, 1350 & n.2 (11th Cir. 1999), and that the Court's own judgment references 18 U.S.C. § 3596(a), and therefore the Court will address the merits out of an abundance of caution.

ECF No. 869 at p. 5 n.6. Here, as before, it would seem Defendant's instant challenges to the constitutionality of 18 U.S.C. § 3596(a) and implementation of his death sentences are more appropriately raised via a habeas petition such as 28 U.S.C. § 2241. Nevertheless, because the Court addressed Defendant's prior motion on the merits,[7] the Court will likewise do so here.

## II. Defendant's Proffered "Evidence" Is Not "Newly Discovered" Within the Meaning of Rule 33(b)(1); His Motion Is Untimely Under Rule 33(b)(2); and the Interest of Justice Does Not Require Relief.

Rule 33 provides:

**(a)** **Defendant's Motion.** Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires. If the case was tried without a jury, the court may take additional testimony and enter a new judgment.

**(b)** **Time to File.**

**(1)** **Newly Discovered Evidence.** Any motion for a new trial grounded on newly discovered evidence must be filed within 3 years after the verdict or finding of guilty. If an appeal is pending, the court may not grant a motion for a new trial until the appellate court remands the case.

**(2)** **Other Grounds.** Any motion for a new trial grounded on any reason other than newly discovered evidence must be filed within 14 days after the verdict or finding of guilty.

---

[7] Although couched in terms of ripeness, one of the Government's arguments also seems to question the propriety of Rule 33. *See* ECF No. 925 at pp. 4–6 & n.1.

6

Fed. R. Crim. P. 33. Rule 33 motions "are highly disfavored motions that a court should grant only sparingly." *United States v. Ali*, 991 F.3d 561, 570 (4th Cir. 2021) (internal quotation marks omitted). "[T]he district court does not need to expound upon its reasoning in its denial of a new trial motion." *Id.* "[A] motion for new trial in a capital case is governed by the same Rule 33 applicable in all criminal cases." *United States v. Johnson*, 713 F. Supp. 2d 595, 605 (E.D. La. 2010);[8] *see* Fed. R. Crim P. 1(a)(1) ("These rules govern the procedure in all criminal proceedings in the United States district courts . . . .").

First, as the Government points out, Defendant's motion does not identify any "newly discovered evidence" *within the meaning of Rule 33(b)(1)*. "Newly discovered evidence" means "evidence relat[ing] to the elements of the crime charged," *United States v. Blackwell*, 436 F. App'x 192, 198 (4th Cir. 2011), or in the capital context, "information" presented at a penalty hearing under 18 U.S.C. § 3593(c) where mitigating and aggravating factors are weighed, *cf. Lee*, 274 F.3d at 493–94 (addressing a Rule 33 motion and discussing "evidence at capital sentencing hearings" under § 3593(c)); *Johnson*, 713 F. Supp. 2d at 620 ("Rule 33 error is evaluated against the record as a whole, which includes the evidence presented in these proceedings relevant to the sentencing selection. Part of the [c]ourt's measurement as to the effect of error includes consideration of the mitigation evidence presented by the defendant at this same selection of trial." (internal quotation marks and citation omitted)). Although Defendant has submitted various exhibits with his motion,[9] these materials are not

---

[8] As the *Johnson* court rightly observed, "federal cases reviewing contemporary capital issues under Rule 33 are scarce." 713 F. Supp. 2d at 605.

[9] Defendant submits an affidavit and a letter from Director Bryan P. Stirling addressing the methods of execution currently available to the South Carolina Department of Corrections; a newspaper article about the various methods of execution; affidavits from John P. Wikswo, Jr., Ph.D. and Jonathan L. Arden, M.D. discussing the physiological effects of electrocution on human beings; nine affidavits from witnesses to executions by electrocution; a journal article detailing the physiology and pathology of different methods of capital punishment; post-mortem

the type of "evidence" contemplated by Rule 33. *See United States v. Smith*, 62 F.3d 641, 649 (4th Cir. 1995) ("[T]hat which is 'newly discovered' must be evidence that would be admissible were a new trial to be granted."). Instead, Defendant's motion presents various legal arguments challenging the constitutionality of 18 U.S.C. § 3596(a). *See Blackwell*, 436 F. App'x at 198 ("[A] Rule 33 motion is designed to rectify factual injustice, not to correct legal error."); *see, e.g.*, *United States v. Christy*, 3 F.3d 765, 768–69 (4th Cir. 1993) ("The fundamental problem with Christy's argument is that there is no new 'evidence.' . . . Christy's motion is a legal argument—not a motion based on new evidence."); *Lee*, 274 F.3d at 496 (concluding "Lee is not entitled to a new penalty trial on the *evidentiary* issues" (emphasis added)).[10]

Second, as the Government argues, Defendant's motion is untimely to the extent he relies on the "Other Grounds" provision of Rule 33(b)(2). A motion under Rule 33(b)(2) must be filed within fourteen days after the verdict, but if that time expires, a court can extend the time under Rule 45(b)(1)(B) "if the party failed to act because of excusable neglect." *Blackwell*, 436 F. App'x at 198. The excusable neglect standard requires a court to consider (1) the danger of prejudice to the opposing party, (2) the length of the delay and its potential impact on judicial proceedings, (3) the reason for the delay, including whether it was within the reasonable control of the movant, and (4) whether the movant

---

reports (excerpts) and photos from executions by electrocution; and post-mortem photographs of a prisoner executed by firing squad. ECF Nos. 923-2 to 923-10.

[10]     Tellingly, Defendant fails to address the five-prong test for newly discovered evidence—the last prong of which requires him to demonstrate such evidence would probably produce an acquittal at a new trial or a different sentence at a new sentencing hearing under 18 U.S.C. § 3593. *See Lighty*, 616 F.3d 321, 374 (4th Cir. 2010) ("To receive a new trial based on newly discovered evidence under Rule 33, a defendant must demonstrate: (1) the evidence is newly discovered; (2) he has been diligent in uncovering it; (3) it is not merely cumulative or impeaching; (4) it is material to the issues involved; and (5) it would probably produce an acquittal."); *id.* at 376 n.47 (rejecting a newly discovered evidence argument "because the newly-discovered evidence . . . would not probably have resulted in a different sentence" at "a new sentencing hearing"); *Christy*, 3 F.3d at 768 ("The defendant must satisfy all five prongs of the test in order to receive a new trial.").

acted in good faith. *United States v. Farris*, 834 F. App'x 811, 812 (4th Cir. 2021) (addressing a denial of a "motion for extension of time to file a Rule 33 motion for new trial" and summarizing the *Pioneer*[11] factors for excusable neglect). These four "factors do not carry equal weight," as "the **excuse given** for the late filing must have the greatest import" and is the "critical factor in the inquiry." *Id.* (emphasis added).

As the Government points out, Defendant acknowledged in his prior Rule 33(b)(2) motion (filed in November 2019) that "[p]resently, South Carolina provides for execution by lethal injection *or electrocution*, at the election of the condemned prisoner."[12] ECF No. 866 at p. 7 (emphasis added). Thus, Defendant clearly recognized electrocution was a possible manner of execution, but he made no argument challenging its constitutionality. Nearly two years later, Defendant argues he satisfies the excusable neglect standard, and the "excuse given" is the recent amendment of S.C. Code Ann. § 24–3–530 and the State's certification that electrocution is the only method available to the South Carolina Department of Corrections. ECF No. 923 at pp. 8–9. However, this "excuse given" by Defendant ignores that 18 U.S.C. § 3596(a) contemplates the Attorney General of the United States maintaining custody of Defendant and a United States Marshal—not a state department of corrections—implementing the death sentences.[13] *See In re Fed. Bureau of Prisons' Execution Protocol Cases*, 955 F.3d 106, 109 (D.C. Cir. 2020) (per curiam) ("At various times since 2001, the Department

---

[11] *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380 (1993).

[12] Defendant even recognized that "on some future date . . . , the state legislature [could] amend[] its capital statute to provide for a different form of capital punishment – such as . . . the firing squad," ECF No. 866 at pp. 7–8. Yet he still made no specific challenge to electrocution itself.

[13] The FDPA permits—but does not require—use of state facilities and/or services of state officials. *See* 18 U.S.C. § 3597(a) ("A United States marshal charged with supervising the implementation of a sentence of death may use appropriate State or local facilities for the purpose, may use the services of an appropriate State or local official or of a person such an official employs for the purpose, and shall pay the costs thereof in an amount approved by the Attorney General.").

of Justice has developed protocols setting forth the precise details for carrying out federal executions."). Simply put, the obstacles facing the South Carolina Department of Corrections (such as not being able to obtain lethal injection drugs) are immaterial.[14]  *Cf., e.g.*, *United States v. Bourgeois*, 423 F.3d 501, 509–10 (5th Cir. 2005) ("[T]he district court . . . acknowledged the authority of the Attorney General, through the auspices of the Director of the Federal Bureau of Prisons, to designate the place of execution and the substances to comprise Bourgeois's lethal injection . . . [and] recognized Congress's delegation to the Department of Justice when the court turned over Bourgeois to the Director of the Federal Bureau of Prisons *and not to the Director of the Institutional Division of the Texas Department of Criminal Justice*." (emphasis added)).  The reason for Defendant's delay clearly weighs against him, and he has not established excusable neglect warranting *another* extension of time to file *another* motion under Rule 33(b)(2). Regardless, even if Defendant has established excusable neglect, the Court must deny his motion for the whole litany of reasons explained in this Order.

Finally, the Court cannot grant a new trial motion—whether under Rule 33(b)(1) or (b)(2)—unless "the interest of justice so requires." Fed. R. Crim. P. 33(a).  As the Government correctly argues, Defendant's motion fails the interest-of-justice test. ECF No. 925 at p. 7.  The interest of justice does not require a new trial—of either the guilt or penalty phase—because Defendant's arguments and proffered evidence are irrelevant to the jury's determination of his guilt and sentence. *Cf. Johnson*, 713 F. Supp. 2d at 644 (applying "interest of justice" standard when ordering a new sentencing selection hearing); *see generally United States v. Jennings*, 438 F. Supp. 2d 637, 642 (E.D. Va. 2006) ("[T]he meaning of the phrase in 'the interest of justice' in the context of Rule 33 is not

---

[14]     In fact, the Federal Government executed thirteen prisoners with a lethal injection drug (pentobarbital) after Defendant was sentenced. *United States v. Higgs*, 141 S. Ct. 645, 647 (2021) (Sotomayor, J., dissenting).

difficult to discern; the phrase's plain meaning makes unmistakably clear that granting a new trial is discretionary, and the cases reflect that this discretion should be exercised where it is demonstrated that the fundamental fairness or integrity of the trial result is substantially in doubt.  The plain meaning of 'the interest of justice' would require no less." (footnotes omitted)), *aff'd*, 496 F.3d 344 (4th Cir. 2007).

### III.     Defendant's Arguments Fail on the Merits.[15]

Even if Defendant's motion were timely, his arguments do not warrant relief.  He

> challenges, on its face and as applied to his case, the constitutionality of the federal statute, 18 U.S.C. § 3596, that incorporates South Carolina's manner of execution.  By carrying over to his sentence the state's switch to the electric chair, a significantly more inhumane method, § 3596 violates his rights against *ex post facto* punishments and cruel and unusual ones, against delegations of federal legislative and judicial power to state officials, and to equal protection and due process, under Article I, Section 1 and Article III, Section 3 of the Constitution, and the Fifth and Eighth Amendments.

ECF No. 923 at p. 2.

Defendant's *ex post facto* challenge fails under binding precedent, *see Malloy v. South Carolina*, 237 U.S. 180, 185 (1915) (finding no *ex post facto* violation because "[t]he statute under consideration

---

[15]     The Court agrees with Defendant that the Government's "principal grounds for opposing Council's motion are procedural," but disagrees with him that the Government "has waived any merits defense."  ECF No. 927 at pp. 8–9 (Defendant's reply).  The Government *does* argue—by relying on the Court's prior order—that § 3596(a) does not violate the nondelegation doctrine.  ECF No. 925 at pp. 3–4.  As for Defendant's *ex post facto*, cruel and unusual, equal protection, and due process claims, the Government asserts it is *unnecessary* to address them because "Defendant's motion is unripe, untimely, and rooted in a misapprehension of the relevant law."  *Id.* at p. 8 n.2.  The Government also cites the undersigned's order in *Sigmon v. Stirling*, No. 3:21-cv-01651-RBH, 2021 WL 2402279 (D.S.C. June 11, 2021), although that order only dealt with an Eighth Amendment challenge to electrocution (whereas, as mentioned in Defendant's motion [ECF No. 923 at p. 4], there was a related state proceeding involving *ex post facto* and due process claims, *see Owens & Sigmon v. Stirling*, No. 2021-CP-40-2306 (S.C. Comm. Pls. filed June 10, 2021)).
        Technically, the Court could decline to address the merits of Defendant's arguments based on its above findings that Defendant does not proffer newly discovered evidence within the meaning of Rule 33(b)(1), that his motion is untimely under Rule 33(b)(2), and that the interest of justice does not require relief.  However, this Court comprehends the need for a complete ruling (both procedural and merits); and regardless, the Court must apply the law—including binding precedent upholding electrocution as constitutional—and cannot ignore the law simply because the Government could have done a better job addressing the merits.

11

did not change the penalty—death—for murder, but only the mode of producing this" and reiterating

"the punishment was not increased"); *cf. United States v. Tipton*, 90 F.3d 861, 901–03 (4th Cir. 1996)

(finding no *ex post facto* violation when the defendants were sentenced to death before promulgation

of a regulation specifying the means of executing their death sentences),[16] as does his Eighth

Amendment challenge, *see Bucklew v. Precythe*, 139 S. Ct. 1112, 1125 (2019) (recognizing "the firing

squad [and] electrocution" are "traditionally accepted methods of execution"); *In re Kemmler*, 136 U.S.

436 (1890) (electrocution); *Wilkerson v. Utah*, 99 U.S. 130 (1878) (firing squad).[17, 18]

---

[16] The amendment to S.C. Code Ann. § 24–3–530 (making electrocution the default method) is procedural; the punishment for Defendant's crimes is still death. *See Dobbert v. Florida*, 432 U.S. 282, 293 (1977) (citing *Malloy* and explaining that "[e]ven though it may work to the disadvantage of a defendant, a procedural change is not ex post facto"); *see, e.g.*, *id.* at 293–94 ("In the case at hand, the change in the statute was clearly procedural. The new statute simply altered the methods employed in determining whether the death penalty was to be imposed; there was no change in the quantum of punishment attached to the crime."); *see also Poland v. Stewart*, 117 F.3d 1094, 1105 (9th Cir. 1997) ("[T]he sentence was death, and that sentence remains in place. The change in method does not make the sentence more burdensome and so does not violate the Ex Post Facto Clause."); *United States v. Chandler*, 996 F.2d 1073, 1096 (11th Cir. 1993) ("The statute under which Chandler was sentenced to death clearly provided for such a sentence, so there was clear notice that a violator of the law might be sentenced to death. Future legislation would not increase the punishment, but would only provide for the method by which the punishment would be carried out; a change in procedure, not the sentence."); *Matter of Fed. Bureau of Prisons' Execution Protocol Cases*, 2021 WL 127602, at *2 (D.D.C. Jan. 13, 2021) (rejecting an *ex post facto* claim and explaining that "[r]ather than requiring that the government use execution procedures in effect at the time the sentence was imposed, § 3596 is written in the present tense: '[w]hen the sentence is to be implemented,' the government shall do so 'in the manner prescribed by the law of the State in which the sentence is imposed'"); *id.* ("[M]ultiple Circuits have found that a change in the method of execution does not increase a condemned inmate's punishment and, thus, does not implicate the Ex Post Facto Clause.").

[17] *See also Barr v. Lee*, 140 S. Ct. 2590, 2591 (2020) ("'This Court has yet to hold that a State's method of execution qualifies as cruel and unusual.'" (quoting *Bucklew*, 139 S. Ct. at 1124)); *Sigmon v. Stirling*, No. 3:21-cv-01651-RBH, 2021 WL 2402279, at *3 (D.S.C. June 11, 2021) (providing detailed discussion and collecting cases); *Hunt v. Nuth*, 57 F.3d 1327, 1338 (4th Cir. 1995) ("[T]he existence and adoption of more humane methods does not automatically render a contested method cruel and unusual."); *United States v. Battle*, 173 F.3d 1343, 1350 n.2 (11th Cir. 1999) (noting the defendant's argument that "electrocution is a cruel and unusual mode of punishment . . . lack[s] serious merit and will not be discussed"); *In re Fed. Bureau of Prisons' Execution Protocol Cases*, 955 F.3d 106, 118 (D.C. Cir. 2020) (Katsas, J., concurring) ("[T]he [Supreme] Court never retreated from its holdings that the firing squad and electrocution are constitutional methods of execution.")

[18] Defendant argues he "must be resentenced to a sentence other than death." ECF No. 923 at p. 43. Notably, in *United States v. Higgs*, 141 S. Ct. 645 (2021)—mentioned by Defendant—the United States District Court for the District of Maryland sentenced the defendant to death, but the State of Maryland subsequently abolished the death penalty. ECF No. 923 at pp. 6–7. The Supreme Court summarily ruled that the district court had to "designat[e] Indiana under 18 U.S.C. § 3596(a)." *Higgs*, 141 S. Ct. at 645. By logical implication, if a federal defendant can still be executed despite the particular state no longer having capital punishment, it would seem a defendant could still

12

Moreover, the Court rejects Defendant's nondelegation challenge for the reasons discussed in its prior order. ECF No. 869 at pp. 5–9 ("[N]either § 3596(a) nor the Court's judgment violates the nondelegation doctrine."); *see United States v. Aramony*, 166 F.3d 655, 661 (4th Cir. 1999) ("[W]hen a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case."). Finally, Defendant provides no direct authority for his equal protection/due process argument that the method of his execution is based on geographical "happenstance." ECF No. 923 at pp. 37–38 ("When it comes time to execute federally condemned prisoners, Council would be electrocuted, another lethally injected, and a third fatally gassed . . . solely based on the happenstance of where the federal court that sentenced them was located."). He also could have presented this argument in his prior motion based on the fact that other inmates on federal death row had already been sentenced in other states with varying execution methods; the argument is untimely.

### Conclusion

For the foregoing reasons, the Court **DENIES** Defendant's motion [ECF No. 923].

**IT IS SO ORDERED.**

| | |
|---|---|
| Florence, South Carolina | s/ R. Bryan Harwell |
| September 10, 2021 | R. Bryan Harwell |
| | Chief United States District Judge |

---

be executed even if, for example, a particular manner of execution (such as electrocution) was later declared unconstitutional (i.e., the death sentence could still be implemented by lethal injection or firing squad).