# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
### FLORENCE DIVISION

UNITED STATES OF AMERICA

v.

BRANDON MICHAEL COUNCIL

DEC 27 '24 PM1:49
RCV'D - USDC FLO SC

No. 4:17-CR-00866-JD

# MOTION FOR SENTENCE REDUCTION
# UNDER 18 U.S.C. § 3582 (C) (1) (A)

Petitioner Brandon Michael Council emphatically supplicates, The United States District Court, For The District Of South Carolina, Florence Division to abate the petitioners previously imposed sentence to time served, under the merits of objectionable extraordinary and compelling legal and medical circumstances that could not have reasonably been forseen at the time of the petitioners sentencing.

pg 1

# INTRODUCTION

Although a Federal Court generally may not modify a term of imprisonment once it has been imposed," Dillon v. United States, 560 U.S. 817, 819 (2010), in 18 U.S.C. § 3582 (C) (1) (A), Congress enumerated several exceptions to this general rule. One exception, commonly referred to as, "Compassionate Release," authorizes United States District Courts to reduce a federal sentence for "Extraordinary and Compelling circumstances which the United States District Court could not have reasonably foreseen at the time of sentencing. For over three decades, under the original statute, only the Director of the Bureau of Prisons could file a motion for what is now known and referred to as Compassionate Release, under section 3582 (C) (1) (A). The Bureau of Prisons directors rarely consented to this avenue that would provide relief to federal prisoners. A 2013 report from the Office of the Inspector General revealed that on average only 24 incarcerated prisoners who qualified for extraordinary and compelling circumstances, Compassionate Release, were reccommended for release by the Federal Bureau of Prisons Directors motion. Citing U.S. Department of Justice Office of the Inspector General, The Federal Bureau of Prisons Compassionate Release Program 1 (2013), https://www.oversight.gov/sites/default/files/oig-reports/e1306.pdf.

pg 2

# INTRODUCTION

The United States Inspector General concluded that the Bureau of Prisons Directors had not properly managed the Compassionate Release Program and that its implementation of the program was inconsistent and resulted in ad-hoc decision making. Id. at p. 11. In 2018, as part of the First Step Act, Congress amended section 3582 (C)(1)(A) to also allow a defendant to seek relief directly from the court when the Bureau of Prisons Director declines to make such a motion. Pub. L. No. 115-391, Title VI, sec. 603 (B)(1), § 3582, 132, Stat. 5194, 5239 2018. The amended statute authorizes a District Court to modify a term of imprisonment previously imposed, after considering the extraordinary and compelling reasons that would warrant the United States District Court to modify a term of imprisonment that was previously imposed. The First Step Act took effect in December 2018, and since that time, United States District Courts have exercised broad unilateral discretion in determining what criteria qualifies as extraordinary and compelling circumstances that would not only justify but require modification of a term of imprisonment. Petitioner Brandon Michael Council has been deprived and divested of his irrevokable Constitutional right not to be subjected and inflicted by torture. Multiple United States legal documents and ratified International treaties explicitly and unequivocally prohibit the United States penology

# INTRODUCTION

system from inflicting or subjecting prisoners to acts of torture. As the United States District Court will see demonstrated by irrefutable facts and ascertainty the petitioners subjection to an illegal and unjustifiable form of torture presents the most compelling and extraordinary set of circumstances as to why the United States District Court has been entreated to intervene and reduce the petitioners previously imposed sentence to time served.

# PERTINENT FACTS

1. On October 7th 2019 Petitioner Brandon Michael Council was sentenced to death in The United States District Court For The District Of South Carolina, Florence Division, for Armed Bank Robbery Resulting In Death and Use Of A Firearm During And In Relation to a Crime of Violence.

2. On November 4th 2019 Petitioner Brandon Michael Council was transfered to the U.S.P. Terre Haute Special Confinement Unit and permanently housed in psychologically harmful conditions of solitary confinement.

3. Permanent subjection to severe, unnecessary, and unjustifiable psychological harm can only be accurately construed and assimilated as an act of torture.

4. The Petitioners subjection to torture is the subsequent result of the petitioners sentence to death, however the additional punishment of solitary confinement which is the cause of the psychological harm is in no manner statutorily authorized, mandated, or required by the petitioners sentence to death.

5. Within the jurisdiction of the United States it is both illegal and unconstitutional to inflict or subject any person to torture as a punitive consequence for a crime a party has been duly convicted of.

# PERTINENT FACTS

6. During the Administrative Remedy Grievance Process Petitioner Brandon Michael Council requested to be transfered to a non psychologically harmful institution within the Bureau of Prisons, but was denied his request to be transfered and remains permanently housed in psychologically harmful conditions of solitary confinement.

7. In a seperate request for Administrative Remedy Petitioner Brandon Michael Council requested that the Bureau of Prisons modify the conditions of his confinement to eradicate the unreasonable subjection to psychological harm to which the Bureau of Prisons also denied.

8. Petitioner Brandon Michael Council directly informed and notified both the United States Attorney General and the Federal Bureau of Prisons Director of his illegal subjection to torture and neither provided any alleviating or rectifying form of relief.

9. The Petitioners allegation of subjection to torture that was directed to the U.S.P Terre Haute Complex Warden, Federal Bureau of Prisons Director and United States Attorney General was never denied or legally disproven.

# PERTINENT FACTS

10. Article 6 Clause 2 of the United States Constitution states," all treaties made or which shall be made under the authority of the United States shall be the Supreme Law of the Land". The non self executing clauses in the Convention Against Torture and Covenant on Civil and Political Rights nullifies, voids, and unbinds those treaties and prohibits United States prisoners the Constitutional right to enforce the rights stipulated in those treaties.

11. The United States has ratified multiple International treaties which pertain to the treatment of United States prisoners, such as the United Nations Convention Against Torture and the Covenant on Civil and Political Rights, which both explicitly prohibit the use of torture.

12. Article 2 stanza 8 of the United Nations Convention Against Torture states that subordinates who commit acts of torture can not abstain themselves from legal responsibility on the grounds that they were just following orders from their superiors.

13. Article 2 of the United Nations Convention Against Torture states no exceptional circumstances whatsoever may be invoked to justify torture, including violent crime, which is why the petitioner was sentenced to death and placed in solitary confinement permanently.

# PERTINENT FACTS

14. Article I of the United Nations Convention Against Torture defines torture as any act which severe pain or suffering, whether physical or mental, is intentionally inflicted for such purposes as obtaining a confession, punishment for an act he has committed or a third party is suspected of having committed, or intimidating or coercing a person for any reason based on discrimination. The petitioners subjection to permanent psychological harm that amounts to torture is the consequent punishment for a crime and act he was convicted of, which violates Articl I of the U.N.C.A.T.

15. Article I of the United Nations Convention Against Torture also references pain or suffering whether physical or mental is intentionally inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity. The petitioners subjection to torture was with the consent and acquiescence of both the United States Attorney General and Federal Bureau of Prisons Director because they were both alerted to the petitioners subjection to torture and both failed to reasonably and appropriately respond

# PERTINENT FACTS

16. The International Covenant on Civil and Political Rights has been ratified by the United States and also prohibits the use of torture. The International Covenant on Civil and Political Rights is a second International treaty that the petitioners illegal subjection to torture violates

17. Article 5 of the Universal Declaration of Human Rights states — No one shall be subjected to torture or to cruel, inhuman or degrading treatment or punishment. The petitioners permanent placement in psychologically harmful conditions of confinement violate the Universal Declaration of Human Rights prohibition of torture and demonstrates a third International treaty that prohibits the use of torture that the United States has breached.

18 The United Nations Standard Minimum Rules of Treatment of Prisoners explicitly prohibits indefinite/permanent solitary confinement, prolonged solitary confinement of more than 15 consecutive days and the automatic placement of prisoners is solitary confinement by virtue of a prisoners

# PERTINENT FACTS

19. In addition to the non self executing clauses that the United States has implemented in both the United Nations Convention Against Torture, and the International Covenant on Civil and Political Rights, the United States has failed to install any legislation that is necessary to seek judiciary relief for violations of the United Nations Convention Against Torture. or the International Covenant on Civil and Political Rights in a United States District Court; which was a condition required by the United States when it ratified the aforementioned treaties.

20. The United States District Court For The Southern District Of Indiana, Terre Haute Division has limited and restricted the petitioners ability to argue and litigate his allegation and subjection to torture which disadvantaged the petitioner due to his Pro Se status and inability to seek action against the United States government; due to his prisoner status.

21. On August 14th 2019 the United States District Court For The District of South Carolina Florence Division inquired as to whether or not future conditions of confinement were going to be an issue and both the petitioners defense attorney and the Assistant United States Attorney believed that the petitioners future conditions would not be an issue, therefor having no aforeKnowledge that the petitioner would be subjected to torture.

# PERTINENT FACTS

22. The Petitioner has been unconstitutionally harmed by his permanent and unjustifiable subjection to psychologically damaging conditions of confinement which has been ongoing for the past 5 consecutive years. The psychological abuse that the petitioner has inured can only be rectified by a United States District Court ruling that dualy terminates the petitioners subjection to torture and squarely sets right the impropriety committed by the Federal Bureau of Prisons.

23. In Glossip versus Gross the Supreme Court of the United States indicated, "If the objection is that death row is a more confining environment, the solution should be modifying the environment rather than abolishing the death penalty." Although the Supreme Court admonished the conditions on death row, the majority of states which still allow Capital Punishment still proceed to utilize excessively severe prison conditions to house individuals who have been sentenced to death.

24. Also referenced in Glossip versus Gross, the American Bar Association recommended that individuals sentenced to death be housed in conditions similar to the general population, yet the United States custom and tradition that houses individuals sentenced to death in flagitous conditions has never been systematically rectified to prevent the unconstitutional use of psychological torture.

# PERTINENT FACTS

25. In the Office of the Inspector General Review of the Federal Bureau of Prisons Use of Restrictive Housing for Inmates with Mental Illness, stanza 5 of the Background Introduction states that, "The Bureau of Prisons own policy also recognizes that an inmates mental health may deteriorate during restrictive housing which is the B.O.P's synonomous term for solitary confinement.

26. Also referenced in the Office of the Inspector General Review of the Federal Bureau of Prisons Use of Restrictive Housing, that in recent years studies have suggested that the frequency, duration, and conditions of confinement in restrictive housing even for short periods of time can cause psychological harm and significant adverse effects and that isolation can be psychologically harmful to any prisoner.

27. The United States Penitentiary, Terre Haute Special Confinement Unit, standard operating procedure facilitates a complete and total isolating environment which confines prisoners housed within that unit 8,500 hours minimum out of a year that has a combined total of 8,760 hours.

28. When the Petitioner is allowed outside the parameters of his assigned cell the petitioner is always isolated and not permitted any human contact with any human being.

# PERTINENT FACTS

29. According to the Bureau of Prisons Policy the individuals sentenced to Federal Capital Punishment are classified as Administrative Detention, which is for non disciplinary purposes, yet the petitioners placement in psychologically harmful conditions prove that he is being punished due to the unequivocal fact that solitary confinement was created to punish and his current and ongoing conditions inflict an unnecessary unreasonable and unjustifiable injury.

30. In 1890 the Supreme Court of the United States granted the Habeas Corpus petition of a United States citizen who was sentenced to death and ordered his release due in part of the Supreme Courts contempt, disdain, and objection to the egregious nature of solitary confinement and the deleterious harm caused by this practice. The cardinal issue was that Mr. Medley was to be confined in isolation by the new law that took effect after the commencement of his crime, rendering his additional punishment ex post facto. The parallel is that Mr. Medley was subjected to solitary confinement by virtue of a statutory requirement. Mr. Councils' isolation has no statutory requirement that indicates he should be subjected to the nefarious nature of his conditions of confinement.

# PERTINENT FACTS

31. Throughout the course of United States jurisprudence history the use of malignant and malicious punishments has been inflicted against United States prisoners. For well over a century extensive research and analysis has been conducted that has shown that solitary confinement causes inevitable and often irreversible side effects and harm to the human brain.

32. Petitioner Brandon Michael Council has an unalienable Constitutional right not to be inflicted by cruel and unusual punishment. In Furman versus Georgia the Supreme Court of the United States indicated in their assessment of the 8th Amendment that our founding fathers intended to outlaw torture and other cruel punishments. The petitioners legally imposed sentence to death can not be utilized to explain, excuse, or justify an unconstitutional and illegal subjection to torture that is explicitly prohibited in the United States of America.

33. The United States District Court For The District Of South Carolina, Florence Division has been earnestly and emphatically entreated to end and rectify the petitioners precarious predicament pertaining to his permanent placement in known psychologically harmful conditions of confinement. The petitioner has been incomprehensibly tortured and denied all of his attempts to acquire relief and is soley relying upon the wisdom of Solomon, Integrity of Justitia, and Mercy of the court to end his unfathomable subjection to torture.

# "POTESTAS DE NOVEM"
## EXTRAORDINARY AND COMPELLING REASONS
## TO REDUCE SENTENCE TO TIME SERVED

1. According to the historical and current construeing of the Constitution of the United States 8th Amendment and multiple ratified treaty agreements made between the United States and the United Nations, it is illegal to subject any person within the jurisdiction of the United States to torture as punishment for a crime a party has been duly convicted of.

2. Based upon the ascertainty of the evidence submitted in support of this motion which can not and has not been disproven or denied by the United States Attorney General or the Federal Bureau of Prisons Director who were both directly informed of the petitioners unjustifiable subjection to torture, the United States District Court has extraordinary and compelling reason to believe and agree that the petitioner Brandon Michael Council has been illegally subjected to an explicitly prohibited act of torture!

3. Due to a United States custom and tradition the petitioner Brandon Michael Council who was previously sentenced to death has been permanently and unjustifiably confined in known psychologically harmful conditions of solitary confinement which was not statutorily authorized, mandated by law, nor in any way stipulated, required, or justified by the sentence to death imposed by the United States District Court.

pg 15

# "POTESTAS DE NOVEM"
## EXTRAORDINARY AND COMPELLING REASONS
## TO REDUCE SENTENCE TO TIME SERVED

4. The Federal Bureau of Prisons Administrators at the Terre Haute Special Confinement Unit have accepted a moral and ethical duty and obligation to provide the individuals within their custody with a safe and humane environment. (Please see the Terre Haute Special Confinement Unit, Institution Supplement, Purpose and Scope.) The Federal Bureau of Prisons was well aware long before the petitioners complaints were filed through the Administrative Remedy Grievance Process that the use of Restrictive Housing, which is the B.O.P technical term for solitary confinement caused irreparable, severe, and inevitable psychological harm. (Please see Office of the Inspector General Review of the Federal Bureau of Prisons Use of Restrictive Housing.)

5. Article 6 Clause 2 of the Constitution of the United States proclaims, all treaties made, or which shall be made under the authority of the United States shall be the Supreme Law of the Land, and the judges in every state shall be bound thereby; The United States has ratified multiple International treaties that prohibit the use of torture yet all are non self executing. The United Nations Standard Minimum Rules For The Treatment Of Prisoners specifically prohibits "Indefinite Solitary Confinement," "Prolonged Solitary Confinement," of more than 15 consecutive days, and the automatic placement in solitary confinement by virtue of a prisoners sentence, thereby the petitioners subjection to torture violates the Supremacy Clause and all three of the International Bill of Rights treaties.

# "POTESTAS DE NOVEM"
## EXTRAORDINARY AND COMPELLING REASONS TO REDUCE SENTENCE TO TIME SERVED

6. The Petitioners request through the Administrative Remedy Grievance Process to be transfered to a non Psychologically harmful prison facility within the Federal Bureau of Prisons, or to modify the standard operating procedures at the Terre Haute Special Confinement Unit to eradicate the subjection to unreasonable risk of psychological harm were both denied. Subsequently the petitioner submitted seperate request to the Senior Complex Warden and the Bureau of Prisons Director beseeching them to petition the United States District Court for sentence reduction under 18. U.S.C. § 3582 (C)(1)(A) to which both parties declined.

7. Petitioner Brandon Michael Council has pending civil litigation pertaining to his conditions of confinement and subjection to torture. Petitioner is represented by Court appointed counsel in that case, and has filed a Pro Se Motion for Writ of Habeas Corpus under 28 U.S.C. § 2241 which was summarily dismissed without predjudice leaving the petitioner destitute of any alleviating or eradicating relief from his permanent and illegal subjection to torture.

# "POTESTAS DE NOVEM"
## EXTRAORDINARY AND COMPELLING REASONS TO REDUCE SENTENCE TO TIME SERVED

8. Due to the petitioners irrefutably prohibited, permanent and unnecessary subjection to torture, while in the custody of the United States Attorney General, the cardinal elucidation why the United States District Court should reduce the petitioners sentence to time served is because it is illegal for the United States to subject the petitioner to torture. To otherwise suggest, allow, or require the petitioner to remain incarcerated after being unconstitutionally subjected to torture would be synonomous to not rectifying the egregious miscarriage of justice that has been beyond demonstrated and not holding the Federal Bureau of Prisons accountable for its indefensible unauthorized use of torture.

9. In Brooker 976 F.3d at 234, The Second Circuit held that the First Step Act allows Federal Courts to independently determine what reasons, "are extraordinary and compelling," and that Application Note 1 (D) to U.S.S.G § 1B1.13, which would otherwise constrain that discretion does not apply to motions for sentence reduction brought by defendants. Thus the United States District Court has broad authority under 18 U.S.C § 3582 (C)(1)(A) to consider any extraordinary and compelling reason for release that a petitioner might raise. Because the use of torture is prohibited by both the 8th Amendment and several ratified treaties the United States is party to the petitioners illegal subjection to torture presents, demonstrates and justifies reducing the petitioners sentence to time served.

# PARTING CONCLUSSION

Due to the magnitude and abundance of irrefutably credible and significant compelling and extraordinary circumstances that have been duly and faithfully imparted to the United States District Court for circumspection which unequivocally demonstrate that the petitioner Brandon Michael Council has been unlawfully tortured for over 5 consecutive years without legal justification or authorization while in the custody of the United States Attorney General, the United States District Court For The District of South Carolina, Florence Division has been beseeched to lawfully intervene and end the petitioners unjustifiable and illegal subjection to torture. As the United States District Court is aware, the petitioner has an irrevokable constitutional right not to be inflicted by any ascertain form of cruel and unusual punishment, which torture has been identified as and has also been explicitly prohibited from being utilized within the jurisdiction of the United States. The petitioners right to 8th Amendment Constitutional protections can not be dissolved, divested or diminished due to any previously imposed sentence, which includes a sentence to death. The irrefutable evidence that has been submitted in support of this motion vividly demonstrate that the petitioners previous, current, and ongoing conditions of confinement at the Terre Haute Special Confinement Unit Constitute an illegal and unconstitutional form of physical and psychological torture.

# PARTING CONCLUSSION

The petitioners assessment and allegation of his current and ongoing subjection to torture at the Terre Haute Special Confinement Unit have never been disproven or denied by any Bureau of Prisons Administrator or United States Government Official who was made aware of the flagitious and nefarious conditions of confinement where he is housed. Despite the United States good faith efforts to outlaw and prohibit indefensible acts such as torture, the United States has failed to prevent and protect the petitioner from being unjustifiably permanently placed in known psychologically harmful conditions of solitary confinement that exceeds the criteria which constitutes torture. Although the petitioner is sentenced to death, the United States Government is still obligated and bound by sublime and plumbline United States Constitutional duty to protect and prevent all individuals confined in United States jails, penitentiaries, and holding facilities from being subjected to torture and all other recognized and ascertain forms of cruel, inhuman degrading treatment or punishment. In reflection of historically binding Supreme Court Of The United States analysis torture has been assimilated as excessive in cruelty, in violation of the 8th Amendment, and an egregious miscarriage of justice which may not be justified due to a sentence to death or any other reason.

# PARTING CONCLUSSION

The afortiori elucidation why the United States District Court has been asked to reduce the petitioners sentence to time served is because the petitioner has been illegally tortured and in pursuit of justice to rectify the petitioners subjection to torture, putative jurisprudence philosophy would dictate that due to the severity and the magnitude of the petitioners indefensible subjection to torture the petitioner should no longer remain in custody or subjected to torture, In summation, Petitioner Brandon Michael Council hereby supplicates the United States District Court to grant the petitioners motion pursuant to 18. U.S.C 3582 (C) (1) (A) citing the merits of objectionable extraordinary and compelling unforseen legal and medical circumstances which could not have reasonably been forseen at the time of the petitioners sentencing that require exigent and expeditious judiciary relief and action.


Humbly Submitted By
Brandon Michael Council /63961056
U.S.P. Terre Haute
P.O. Box 33
Terre Haute, IN, 47808

# SUBSTANTIATING DOCUMENTS

1. Excert from Petitioners Direct Capital Appeal.
   pgs. 25 - 35

2. Center For Constitutional Rights - U.S. Tortures Before It Kills.
   pgs. 36 - 55

3. The 20 Worst Prisons In The World.
   pgs. 56 - 58

4. National Commission on Correctional Health Care Position Statement.
   pgs. 59 - 64

5. OFFice of the Inspector General Review of B.O.P use of Restrictive Housing.  pgs. 65 - 66

6. Petitioners Judgment In Criminal Case committed to United States Attorney General custody.  pg. 67

7. American Friends Service Committe Solitary Confinement Facts.  pgs. 68 - 69

8. Dr. Elena Blanco - Suarez Effects of Solitary Confinement.
   pgs. 70 - 71

9. Center For Constitutional Rights excert pg. 15  pg 72

10. United Nations Convention Against Torture. (Ban on Torture)
    pgs. 73 - 75

11. International Covenant on Civil and Political Rights.
    (Ban on Torture)  pgs. 76 - 77

12. Universal Declaration of Human Rights. (Ban on Torture)
    pgs 78 - 79

# SUBSTANTIATING DOCUMENTS

13. Terre Haute Special Confinement Unit Institution Supplement (Purpose and Scope) pg 80

14. Terre Haute Special Confinement Unite Standard Operating Procedure. (Recreation and Shower) pg 81

15. Administrative Remedy Grievances and Responses pertaining to torture at the Terre Haute Special Confinement Unit, pgs. 82 - 95

16. Denial of Compassionate Relase by Terre Haute Special Confinemeat Units Complex Warden. pg 96

17. Photo copies of Certified mail receipts to United States Attorney General from Petitioner. pg 97

18. Additional copies of certified mail receipts to S.C.O.T.U.S U.S.A.G and Deputy U.S.A.G from Petitioner, pg 98

19. 2022 letter to United States Attorney General from Petitioner pertaining to torture, pgs. 99-101

20. 2023 letter to United States Attorney General from Petitioner also pertaining to torture, pgs 102-107

21. 2023 letter to Federal Bureau of Prisons Director from petitioner pertaining to torture and compassionate release motion. pgs. 108 - 112

# SUBSTANTIATING DOCUMENTS

22. Reply from 2023 letter to the Federal Bureau of Prisons Director. pgs. 113 - 114

23. Petitioners Writ of Habeas Corpus. pg. 115

24. Entry Dismissing Petitioners Writ of Habeas Corpus. pgs. 116 -117

25. United States District Court For The District Of Indiana Document. pgs 118 - 119

26. United States District Court For The District Of South Carolina transcript of proceedings. pgs 120 - 122

27. Supreme Court Of The United States case (1890 IN RE MEDLEY) pgs 123 - 129

28. S.C.O.T.U.S. case Furman versus Georgia (Excert) pg. 130

29. S.C.O.T.U.S case Glossip versus Gross (Excert) pg. 131

30. S.C.O.T.U.S case Glossip versus Gross (Excert) pg 132

31. S.C.O.T.U.S case Glossip versus Gross (Excert) pg 133

32. United States versus Donald Fell (Craig Haney testimony pertaining to solitary confinement and the Terre Haute Special Confinement Unit) pgs 134 - 211

33. 2024 Response to letter to Deputy United States Attorney General. pg

# I.

## Condemning Council to indefinite solitary confinement on federal death-row constitutes cruel and unusual punishment.

Almost all of Council's jurors said on the sentencing verdict form that they did not believe that being incarcerated in a federal prison for life would be a "severe" punishment. (ECF #856 at 10; ECF #857 at 10). But they had heard nothing about the subject, let alone about solitary confinement on federal death row to which they were condemning him, where he will be isolated in a small cell, probably for decades, watching his fellow prisoners taken away to be strapped to a gurney and killed by the government, until one day, he is tapped to join them. This Court, though, should be informed what that experience is like, because it is one that violates the Eighth Amendment's prohibition against cruel and unusual punishment, and requires reversal of Council's death sentence.[1] See Davis v. Ayala, 576 U.S. 257, 288-89 (2015) (Kennedy, J., concurring) ("Too easily ignored is the question of what comes" after sentencing, as "[p]risoners are shut away — out of sight, out of mind," with "most . . . judges" assuming that is a

---

[1] Though trial counsel did not raise this issue below, the cruelty of indefinite solitary incarceration under a death sentence rises to the level of structural and thus plain error. *See* Fed. R. Crim. P. 52(b); *United States v. Olano*, 507 U.S. 725, 734 (1992); *United States v. Gary*, 954 F.3d 194, 203-04 (4th Cir. 2020); *United States v. White*, 405 F.3d 208, 219-21 (4th Cir. 2005).

1

matter "for the policy makers and correctional experts").

**A.  Under a federal death sentence, Council will remain isolated in a cell the size of a small bathroom probably for decades under the looming threat of execution, which will scar and torment him.**

Unlike other federal prisoners who may hope to earn less harsh confinement conditions over time with good behavior and positive evaluations, a prisoner, like Council, is and will remain incarcerated in the "Special Confinement Unit," federal death row, at USP Terre Haute, as long as he is under a death sentence. *See United States v. Fell*, 224 F. Supp. 3d 327, 345 (D. Vt. Dec. 13, 2016). Moreover, Council, whose death sentence is just in the initial stage of review, can expect to spend decades there before he is executed. The seven federal inmates whom the government put to death last year had been sentenced from 17 to 27 years before; on average, each had spent 20 years under a death sentence.[2] And, of the 55 who remain on death row, almost a quarter (13) have been locked up there for 20 years or more, the longest three for 27 years each; about half (27) have been there for 15 years or more.[3] *See also Fell*, 224 F. Supp. 3d at 345.

---

[2] *See* Death Penalty Information Center, *Federal Death Penalty: Executions Under the Federal Death Penalty*, https://deathpenaltyinfo.org/state-and-federal-info/federal-death-penalty/executions-under-the-federal-death-penalty.

[3] *See* Death Penalty Information Center, *Federal Death Penalty: List of Federal Death-Row Prisoners*,

2

pg 26

Of course, "the delay is generally the result of searching examination of the cases on appeal and, especially, on collateral review . . . . No judge at any level in the process would wish to overlook a potential legal error which led to an execution." *Id.* *See also Hall v. Florida*, 572 U.S. 701, 724 (2014) ("Those who face that most severe sanction must have a fair opportunity to show that the Constitution prohibits their execution."); *Glossip v. Gross*, 135 S. Ct. 2726, 2764 (2015) (Breyer & Ginsburg, JJ., dissenting) (answer to prolonged, torturous death-row confinement cannot be to "abandon the procedural requirements that assure fairness and reliability" in administration of capital punishment).

The federal court in *Fell* held an extensive evidentiary hearing; heard testimony from multiple experts about the conditions on federal death-row, and their effects on prisoners; and made detailed findings on this subject. 224 F. Supp. 3d at 345-47. As it recognized, prisoners like Council "are confined in their cells for 23 out of every 24 hours." In that cramped, 6x10 foot space, the size of a small bathroom or a parking spot, they live out the remainder of their lives, — eating, sleeping, showering, relieving themselves (in a steel toilet that is always within arm's reach), and trying to find distraction in reading or watching a small

https://deathpenaltyinfo.org/state-and-federal-info/federal-death-penalty/list-of-federal-death-row-prisoners.

*No*

television. There too, they "have very limited contact with other people," including other prisoners and guards. This is "by design," as even "the physical arrangement of "death row "is set up to minimize contact by prisoners with others."[4]  Thus, "the cells have no view to the outside," and "unusual measures [are] taken to achieve isolation through the use of slots for food trays" and "separation of cells," with inmates often surrounded by empty cells.[5]  "[E]ven the exercise hour," which occurs five days a week in a small outdoor cage, "permits only a view of the sky."[6]  And because the prison is so remote from most prisoners' homes and families, they generally "have few visitors and no physical contact with those who do come," but rather must talk over a phone while separated by thick glass. *Id.*

The *Fell* court found "most troubling" the effects of such "long term-

---

[4] Prisoners can try to speak to staff when they make "rounds," and to each other though the air vents or by calling out in the corridor. *Id.*

[5] The cells have solid steel doors, so prisoners cannot see or readily talk with others in nearby cells. *Fell*, Transcript at 65-69, No. 2:14-cv-377 (D. Vt. July 11, 2016).  They can try to speak to staff who occasionally make "rounds," and to each other though the air vents or by calling out in the corridor. *Fell,* 224 F. Supp. 3d at 345-47.

[6] The exercise cages, located on the unit's roof, are surrounded by solid walls on all sides. *Fell*, Hearing Transcript at 52, No. 2:14-cv-377 (D. Vt. July 11, 2016). Prisoners are transported there fully restrained with handcuffs, leg irons, and chains. *See Fell*, ECF #98-17, No. 2:14-cv-377 (D. Vt. Dec. 2, 2016).

pg 28

isolation," including significant "trauma and distress," "high rates of depression and social withdrawal," and especially a "widespread phenomenon" on death-rows described by one witness — nationally renowned expert Craig Haney, who inspected federal death row and interviewed a number of prisoners there.[7] That is the phenomenon of "melancholia, a deep joylessness, a kind of a grief that's deeper than depression, where people just feel like they've lost who they are, who they were." *Id.*

Haney described this phenomenon further in his testimony at the *Fell* hearing: "[A]fter long-term solitary confinement," many prisoners "are no longer comfortable with people, they no longer feel connected to other people. Often times . . . they haven't been able to maintain contacts with the outside world . . . . The only physical contact they'll have with another human being is the incidental contact they have with a correctional officer whose putting them in restraints. Otherwise, there's no opportunity to ~~shake hands, hug, or do~~ the things we function as a civilized human being Instead they are treated as slaves, animals and property ordinarily would do, not just signs or demonstrations of affected, but it's a way of reinforcing our humaneness. Well, you live for a long period of time where you can't do even those basic things and your self begins to recede . . . . And they are

_____

[7] Haney testified that these overall conditions on federal death row made it much more restrictive than most solitary-confinement units across the country. *Fell*, Hearing Transcript at 57, 66-72, No. 2:14-cv-377 (D. Vt. July 11, 2016).

5

pg 29

*intellectually*

for all intents and purposes socially dead."[8] *Fell*, Hearing Transcript at 44-45, No. 2:14-cv-377 (D. Vt. July 11, 2016). For prisoners who already suffer from mental illness when they arrive, it typically worsens, sometimes severely, in such a harsh setting.[9]

The *Fell* court concluded that "[i]t is clear . . . that the process of holding prisoners for indefinite terms extending into decades in solitary confinement" on federal death row "is highly damaging." It found "[n]o persuasive evidence . . .

*disciplinary*

that such severe isolation was necessary for reasons of security or prison safety."

*these customs & tradition*                    *centuries*

*Id*. Rather, the practice appears to simply have been carried over from years ago, though then, the "time between trial and execution might be measured in days or weeks," and thus the "practice may have been less damaging to prisoners." *Id*.

These findings echoed the observations of several Supreme Court justices. In *Davis*, Justice Kennedy recognized "research confirms" that "[]years of near-total isolation exact a terrible price. *See* Grassian, Psychiatric *Effects of Solitary Confinement*, 22 Wash. U. J.L. & Pol'y 325 (2006) (common side-effects of

---

[8] Haney also observed that, during his inspection, he saw a number of death-row inmates spending the daytime hours in bed "inert" in their small, individual cells, since "there's nothing for them to do" and "no reason for them to get up." *Id*. at 71.

[9] *See Fell*, Hearing Transcript at 62, No. 2:14-cv-377 (D. Vt. July 11, 2016).

6

*pg 30*

solitary confinement include anxiety, panic, withdrawal, hallucinations, self-mutilation and suicidal thoughts and behaviors)." 576 U.S. at 289-90. *See also Glossip*, 135 S. Ct. 2675 (Breyer & Ginsburg, JJ., dissenting) ("prolonged solitary confinement produces numerous deleterious harms) (citing, among other sources, article by Craig Haney, the testifying expert in *Fell*). By the time the government was ready to execute one federal prisoner last year, "his mental condition had deteriorated to the point where he no longer understands why he is being executed." *Barr v. Purkey*, 140 S.Ct. 2494, 2595 (2020) (Breyer & Ginsburg, JJ., dissenting). Such deterioration, after decades of death-row confinement, is not uncommon. *See Madison v. Alabama*, 139 S. Ct. 718, 723 (2019).

For those on federal-death row, the "dehumanizing effects" of being entombed on death row are aggravated by the looming threat of actually being put to death, a prospect whose inexorable approach he is reminded of with every execution of a fellow prisoner. *Glossip*, 576 U.S. at 2765 (Breyer & Ginsburg, JJ., dissenting). For Council, that includes the seven executions that have occurred since he was sentenced and dispatched to death row.[10] As summarized by the

---

[10] The federal government executed more prisoners last year, in 2020, than in any year since World War II, and more than any other state and almost as many as all the states combined did that year. *See* Death Penalty Information Center, *Federal Execution Spree Out of Step With U.S. Death Penalty Trends and Attitudes* (Sept. 3, 2020),

pg 31

national expert the *Fell* court credited, "they are all living under the additional stress of a pending, if not impending, death sentence and the associated stress and terror and uncertainty that comes with that."[11] It is unknown to the inmates or their attorneys who will be marked next by the government and assigned a date to be put to death, until the warden comes to tell the unfortunate prisoner the awful news, read him his death warrant, and record who he wants to witness him die, how he wants to be buried, and what he wants done with his property. As the time set for the lethal injection approaches, those earmarked react differently; some are unable to speak, others become violently ill, vomiting uncontrollably. And the ping-ponging back and forth that comes with the granting and vacating of stays of execution by courts at different levels, often in the middle of the night, only elevates the trauma and distress, most acutely, of course, of those slated for lethal injection, but also for their fellows on death row who watch and wait. As one prisoner described it: "I was awake in the middle of the night before their executions when the guards came to get each of them. I saw their faces and

---

https://deathpenaltyinfo.org/news/dpic-analysis-federal-execution-spree-out-of-step-with-u-s-death-penalty-trends-and-attitudes.

[11] *Fell*, Hearing Transcript at 86, No. 2:14-cv-377 (D. Vt. July 11, 2016);

8

witnessed them walking out of their cells, never to return."[12]

**B.     Such prolonged, isolated, and debilitating confinement under a death sentence would have been unthinkable to the Framers of the Eighth Amendment, but neither this Court nor the Supreme Court have ever determined its constitutionality.**

As several justices of the Supreme Court have recognized, the passage of decades between a death sentence and its execution both undermines the penological rationales for the death penalty, deterrence and retribution, but can also constitute "cruel and unusual punishment prohibited by the Eighth Amendment," *Gomez v. Fierro*, 519 U.S. 218 (1996) (Stevens & Breyer, JJ., dissenting from denial of certiorari), because it "subjects death row inmates to decades of especially severe, dehumanizing conditions of confinement," *Glossip*, 135 at 2764-69 (Breyer & Ginsburg, JJ., dissenting).[13] *See also Purkey*, 140 S. Ct. at 2595 (Breyer & Ginsburg, JJ., dissenting).

This view derives support from the original understanding of the Eighth

_Retaliation is CEUP_

---

[12] *See Fell*, Hearing Transcript at 58-59, No. 2:14-cv-377 (D. Vt. July 11, 2016); Segura, *Trump Prepares to Execute Christopher Vialva for a Crime He Committed as a Teenager*, The Intercept (Sept. 20, 2020), https://theintercept.com/2020/09/20/federal-executions-christopher-vialva/; Allen, *A Dispatch From Federal Death Row*, The Marshall Project (July 16, 2020), https://www.themarshallproject.org/2020/07/16/a-dispatch-from-federal-death-row.

[13] Justices Stevens and Breyer also noted that this is "an argument that courts in other countries have found persuasive." *See Gomez*, 519 U.S. at 218.

pg 33

Amendment. "[A] delay" of even 17 years before execution "if it ever occurred, certainly would have been rare in 1789, and" contrary to "the practice of the Framers." *Lackey v. Texas*, 514 U.S. 1045 (1995) (Stevens, J., respecting denial of certiorari); *Glossip*, 135 S. Ct. at 2769 (Breyer & Ginsburg, JJ., dissenting) ("When the Founders wrote the Constitution, there were no 20– or 30–year delays. Execution took place soon after sentencing"). Thus, in 1890, the Supreme Court called a mere four-week delay between a death sentence "horrible" and recognized the "terror" it must inspire in the prisoner. *In re Medley*, 134 U.S. 160, 167-68 (1890). *See Dunn v. Madison*, 138 S. Ct. 9, 12 (2017) (Breyer, J., concurring). Indeed, as late as "1960, the average delay between sentencing and execution" was only two years. *Glossip*, 135 S. Ct. at 2764 (Breyer & Ginsburg, JJ., dissenting).

The cruelty of such delays is even clearer today, given the growing understanding of the serious psychological damage caused by prolonged solitary confinement, as proven to and accepted by the *Fell* court for federal death row specifically and as recognized by several Supreme Court justices for such isolation generally. *See* Section A, *ante*.

Whether such prolonged, torturous delay before execution violates the Eighth Amendment's prohibition on cruel and unusual punishment or the Fifth Amendment's guarantee of due process constitutes an important issue that has

10

pg 34

never been decided either by the Supreme Court, *see Jordan v. Mississippi*, 138 S. Ct. 2567, 2568 (2018) (Breyer, J., dissenting from denial of certiorari), or apparently by any circuit in a federal capital direct appeal. *But see Jones v. Chappell*, 31 F. Supp. 3d 1050. 1056 (C.D. Cal. 2014) (finding delays of over 25 years for execution to be unconstitutional), *rev'd*, 806 F.3d 538 (9th Cir. 2015) (rejecting claim based on procedural habeas rule, without reaching merits).

Prior federal decisions appear to have been limited to challenges to executing a death sentence rather than its original imposition. And such challenges, as in *Jones*, were presented in habeas proceedings involving state death sentences. Council's claim, by contrast, involves a federal death sentence and is raised in a direct appeal where the habeas limitations on merits review do not apply. This Court should confront the issue head-on and, based on its merit, set aside Council's death sentence and order resentencing to life imprisonment. *See* 18 U.S.C. § 3595(c)(2)(C).

pg 35