IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | |
| | ) | CRIMINAL NO. 4:17-cr-866 |
| BRANDON MICHAEL COUNCIL, | ) | |
| | ) | |
| Defendant. | ) | |

**United States' Response in Opposition to
Defendant's Motion for Compassionate Release**

The Court should deny Defendant Brandon Michael Council's motion for compassionate release. Council moves under 18 U.S.C. § 3582(c)(1)(A)(i), asserting as the extraordinary and compelling reason for release that the conditions of his confinement on death row amount to torture in violation of the Eighth Amendment to the United States Constitution and various other treaties. For the reasons set forth below, Council's motion is meritless and should be summarily denied.

## BACKGROUND

On August 21, 2017, Council senselessly and brutally executed two innocent bank employees, Donna Major and Katie Skeen, while robbing the CresCom Bank in Conway, South Carolina, by shooting them both in the head at point blank range. After two days on the run, he was caught and confessed not only to the CresCom murders, but additionally to having committed two other robberies in North Carolina the week prior—one of a Food Lion grocery store clerk in Raleigh, and another of a BB&T bank teller in Wilson.

On September 20, 2017, Council was indicted for two capital offenses based on the CresCom robbery and murders: bank robbery resulting in death, in violation of 18 U.S.C. § 2113(a) and (e), and use of a firearm during and in relation to a crime of violence and causing

death in such a manner to constitute murder, in violation of 18 U.S.C. § 924(c) and (j).[1] On March 21, 2018, the United States filed notice stating its intent to seek the death penalty. ECF No. 81.

On September 24, 2019, after a four-day trial, a jury of Council's peers selected from a statewide jury pool convicted on both capital-eligible counts. ECF No. 819. After hearing five additional days of testimony in the penalty phase of the trial, which included a significant amount of "mitigating" evidence put on by the defense, the same jurors unanimously voted to impose the death penalty rather than life imprisonment. ECF Nos. 856 and 857. The Court entered judgment on October 7, 2019. ECF No. 860.

Council appealed his sentence and conviction to the Fourth Circuit. The Fourth Circuit affirmed the District Court by order dated August 9, 2023, *United States v. Council*, 77 F.4th 240 (4th Cir. 2023), and the Supreme Court denied certiorari, *United States v. Council*, No. 23-953, 2024 WL 4427540 (U.S. Oct. 7, 2024).[2]

On December 23, 2024, the then-President of the United States announced that he was categorically commuting the sentences of 37 individuals on federal death row, including Council's.[3] Based on this executive action, on December 26, 2024, Council's death sentence was reduced to life imprisonment without the possibility of parole. ECF No. 955.

---

[1] Council was additionally indicted for being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. § 922(g), but prosecutors dismissed this charge prior to trial considering legal issues that arose during the pendency of the case.

[2] Council has not yet filed a motion for relief pursuant to 28 U.S.C. § 2255.

[3] *President Biden Commutes the Sentences of 37 Individuals on Death Row*, https://www.whitehouse.gov/briefing-room/statements-releases/2024/12/23/fact-sheet-president-biden-commutes-the-sentences-of-37-individuals-on-death-row/ (last viewed January 15, 2025).

On December 27, 2024, the Clerk filed Council's present motion seeking to be resentenced to "time served"—in other words, seeking immediate release from prison—based on his assertion that being housed in solitary confinement on death row amounts to torture.[4] ECF No. 956. While awaiting execution, Council has been housed on death row at USP Terre Haute, Indiana, along with all other federal inmates under the same sentence.

Council's motion should be summarily denied for several reasons which are fully set forth below: first, Council's conditions of confinement claim is only cognizable under 28 U.S.C. § 2241, *not* under 18 U.S.C. § 3582(c)(1)(A)(i); second, Council's claim is not unique to him such that it is not a basis for the rare remedy of compassionate release; and third, even if Council were eligible for relief, the factors under 18 U.S.C. § 3553(a) unquestionably weigh against an early release.

## LAW & ARGUMENT

Typically, a criminal sentence is final and a court "may not modify a term of imprisonment once it has been imposed." § 3582(c); *see Dillon v. United States*, 560 U.S. 817, 824 (2010). But there are exceptions; relevant here, § 3582(c)(1)(A)(i) authorizes a court to reduce a sentence if the court finds "extraordinary and compelling reasons [that] warrant such a reduction." § 3582(c)(1)(A)(i). Reductions for extraordinary and compelling reasons—together with sentence reductions for certain elderly inmates under § 3582(c)(1)(A)(ii)—are commonly referred to as "compassionate release."

---

[4] Given that Council's nearly two-dozen-page handwritten, *pro se* motion was mailed to the Clerk from his prison cell in Terre Haute, Indiana, Council almost certainly drafted his undated motion prior to learning of the President's commutation. It is noteworthy that Council also has a pending civil action in the Southern District of Indiana where he is suing the warden and a psychologist at FCI Terre Haute for violating the Eighth Amendment in the same manner alleged in this motion, *Council v. Watson and Sacchetti*, 2:21-CV-302 (S.D.In.). In that suit, he is seeking "100 million dollars" in damages according to his amended complaint. ECF No. 101 at 7.

A court may grant compassionate release only (1) if the sentence reduction is "consistent with applicable policy statements issued by the Sentencing Commission" and (2) "after considering" the § 3553(a) factors. *See* § 3582(c)(1)(A). The applicable policy statement is found in United States Sentencing Guideline § 1B1.13.[5] Section 1B1.13 requires that the prisoner not be a "danger to the safety of any other person or to the community." § 1B1.13(a)(2). And it "describes what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." *See* 28 U.S.C. § 994(t). The policy statement lists six categories of circumstances that can constitute extraordinary and compelling reasons. Council's claim fits into none of them.

**I.      Council's conditions of confinement claim is only cognizable under 28 U.S.C. § 2241, *not* under 18 U.S.C. § 3582(c)(1)(A)(i).**

Council's sole claim is founded on the notion that being housed in solitary confinement while on death row amounts to torture.[6] *See* ECF No. 956 at 5. Even if this presupposition were true, this argument is not cognizable under 18 U.S.C. § 3582(c)(1)(A).

---

[5] A motion for compassionate release can be filed by the Director of the Bureau of Prisons on a prisoner's behalf. *See* § 3582(c)(1)(A). Or it can be filed by the prisoner himself after he satisfies § 3582(c)(1)(A)'s exhaustion requirement. Here, Council filed the motion on his own behalf. And the government accepts that he satisfied § 3582(c)(1)(A)'s exhaustion requirement.

Section 1B1.13 is an applicable policy statement for Council's self-filed motion. The Fourth Circuit previously held that § 1B1.13 was not an "applicable policy statement" for prisoner-filed motions for compassionate release. *See United States v. McCoy*, 981 F.3d 271, 282 (4th Cir. 2020). That decision reasoned that § 1B1.13 was not an "applicable policy statement" for prisoner-filed motions because it referenced motions only from the Director of the BOP. But—following amendments to the Sentencing Guidelines—§ 1B1.13 now clearly references prisoner-filed motions. *See* § 1B1.13(a) (applying to motions made by "the Director of the Bureau of Prisons *or the defendant*" (emphasis added)). Notwithstanding *McCoy*, therefore, § 1B1.13 is an "applicable policy statement" for prisoner-filed motions.

[6] Council's motion is undated, but the fact that it was not filed by the Clerk in South Carolina until December 27, 2024, indicates that Council most likely drafted and mailed it before learning of the former President's commutation which was announced just days prior, on December 23,

Following the Sentencing Commission's 2023 Amendments to the Guidelines, a defendant cannot establish an "extraordinary and compelling reason" for compassionate release based on the conditions of his confinement because "the revised guidelines do not contemplate that prison conditions can be a ground for a sentence reduction." *United States v. Young*, No. 7:16-CR-10, 2023 WL 8722060, at *4 (W.D. Va. Dec. 18, 2023). This is because conditions of confinement claims are appropriate for consideration under 28 U.S.C. § 2241, *not* 18 U.S.C. § 3582. As such, courts "have held that harsh prison conditions, whether due to the pandemic or other factors, do not justify a reduced sentence." *Id.* (collecting cases); *Allen v. United States*, No. 4:02-CR-00750-TLW-1, 2023 WL 6218114, at *4 (D.S.C. Sept. 25, 2023) ("[T]he Court concludes that [Defendant]'s argument about his conditions of confinement does not establish a stand-alone reason for compassionate release."); *United States v. Rios-Villanueva*, No. CR 5:11-21-JFA, 2023 WL 186804, at *5 (D.S.C. Jan. 13, 2023) ("[T]he court concludes that the defendant's reliance upon the threat of the COVID-19 pandemic, coupled with his complaints regarding the conditions of his confinement, fails to demonstrate extraordinary and compelling reasons for his release."); *see also United States v. Cannon*, No. CR 3:14-430-JFA, 2024 WL 3898632, at *2 (D.S.C. Aug. 22, 2024) (finding that the defendant's arguments related to the conditions of his confinement were not appropriate for consideration under § 3582(c)(1)(A)").

---

2024. Given that Council's death sentence has been commuted, his claims related to his confinement on death row are likely moot in addition to being inappropriate for consideration under § 3582(c)(1)(A).

For these reasons, Council cannot use this forum to bring a conditions of confinement claim under the guise of a compassionate release motion. His entire motion should be summarily denied on this basis.

**II.     Council's claim is not unique to him and, therefore, it is not a basis for the rare remedy of compassionate release.**

Council's claim also fails on the merits because his conditions of confinement claim is premised on the conditions affecting *each inmate* on death row, not just him. Prison conditions categorically impacting a group of prisoners cannot qualify as extraordinary and compelling reasons for compassionate release.

To start, prison conditions alone cannot be "extraordinary and compelling reasons" within the meaning of § 3582(c)(1)(A)(i). Consistent with the "'fundamental canon of statutory construction' that words generally should be 'interpreted as taking their ordinary, contemporary, common meaning,'" *Wisconsin Cent. Ltd. v. United States*, 138 S. Ct. 2067, 2074 (2018), the word "extraordinary" in § 3582(c)(2)(A)(i) should be understood "to mean 'most unusual,' 'far from common,' and 'having little or no precedent.'" *United States v. McCall*, 56 F.4th 1048, 1055 (6th Cir. 2022) (en banc) (quoting *Webster's Third New International Dictionary of the English Language* 807 (1971)).

With that in mind, it becomes clear why Council's claims fail. Every death row prisoner was subjected to the same "solitary confinement" conditions. So, there is nothing "extraordinary" about these conditions for inmates on death row. Consider the absurd result of the contrary conclusion: Every death row prisoner, or any other prison in long-term solitary confinement, would be eligible for compassionate release.

Further, even if the conditions on death row could clear the statutory hurdle, they cannot satisfy the policy statement. The catch-all provision in § 1B1.13(b)(5) requires circumstances that are "similar in gravity" to the circumstances listed in § 1B1.13(b)(1)–(4). But the restrictions imposed on death row are not "similar in gravity" to the listed circumstances. The specifically enumerated circumstances are life-altering crises. *See, e.g.*, § 1B1.13(b)(3)(A) (authorizing compassionate release where the caregiver for the prisoner's disabled child dies). And they are generally ongoing circumstances that will be alleviated by the prisoner's release. *See, e.g., id.*

Nothing about Council's claim rises to the level of a life-altering crisis that releasing him could cure. On the contrary, the place in which he finds himself housed is a direct result of the death sentence that was decided by the jury and imposed by the Court, not some unforeseen life crisis. The fact that the BOP houses death row inmates in the difficult condition of solitary confinement is no reason to allow them to be released. *See United States v. Young*, 2023 WL 8722060, at *4 (W.D. Va. Dec. 18, 2023) (noting that "harsh prison conditions, whether due to the pandemic or other factors, do not justify a reduced sentence").

For these reasons, Council's motion should be denied for failing to state "extraordinary and compelling" circumstances under the statute.

### III. Even if Council had shown extraordinary and compelling circumstances, the Section 3553(a) factors still unquestionably weigh against his release.

Even if Council had presented extraordinary and compelling reasons for compassionate release, the Court, in an exercise of its discretion, should deny his request in light of the statutory sentencing factors.

As the movant, Council bears the burden of establishing that he is entitled to a sentence reduction under Section 3582. *United States v. Centeno-Morales*, 90 F.4th 274, 279 (4th Cir.

2024). If the defendant can show an extraordinary and compelling reason that renders him eligible for a sentence reduction, the Court must then consider the factors under 18 U.S.C. § 3553(a) to determine whether, in its discretion, a reduction of sentence is appropriate. *Dillon v. United States*, 560 U.S. 817, 826–27 (2010); *see also United States v. Trotman*, 829 F. App'x 607, 608 (4th Cir. Nov. 17, 2020) (per curiam) (recognizing that, when considering a motion to reduce sentence under § 3582(c)(1)(A), the court must consider the sentencing factors under § 3553(a), to the extent applicable); *United States v. Chambliss*, 948 F.3d 691, 693–94 (5th Cir. 2020). But compassionate release is a "rare" remedy. *Chambliss*, 948 F.3d at 693–94; *United States v. Mangarella*, FDW-06-151, 2020 WL 1291835, at *2–3 (W.D. N.C. Mar. 16, 2020); *White v. United States*, 378 F. Supp. 3d 784, 787 (W.D. Mo. 2019).

Here, the Section 3353(a) factors—in particular, the nature and circumstances of the offense, the history and characteristics of the defendant, and the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment, and protect the public from future crimes of the defendant—unquestionably disfavor granting the rare remedy of a reduction to Council's sentence. As stated, based on the former President's categorical grant of clemency, Council is now serving a life sentence. Thus, Council's sentence has already been substantially reduced from the penalty that an impartial jury found to be appropriate: execution. In so doing, the jurors relied on the following findings concerning the aggravating circumstances of this offense, each found unanimously and beyond a reasonable doubt as recorded on the 14-page, detailed jury forms, ECF Nos. 856 and 857:

1. Council intentionally killed Donna Major and Kathryn Skeen.

2. Council intentionally killed more than one person in a single criminal episode.

3. Council committed the offense in the expectation of the receipt of something of pecuniary value.

4. Council caused injury, harm, and loss to the victims, as well as to the family, friends, and co-workers of the victims, and the injury, harm, and loss caused by the defendant with respect to each victim is evidenced by the victim's personal characteristics and by the impact of the victim's death upon their family, friends, and coworkers.

5. Council engaged in a continuing and escalating pattern of criminal activity - including a robbery of a Food Lion grocery store in Raleigh, North Carolina on or about August 8, 2017, and a robbery of a Branch Bank and Trust (BB&T) bank located in Wilson, North Carolina on or about August 11, 2017 - culminating with the armed robbery of the CresCom bank located in Conway, South Carolina on August 21, 2017.

6. Council displayed particular cruelty and callous disregard for human life by shooting both victims, who were unknown to him, multiple times at close range without warning and without provocation or resistance from the victims, in spite of the fact that such violence was not necessary to successfully complete the robbery of the CresCom bank.

7. Council's actions from the commission of the offenses on August 21, 2017, until his arrest on August 23, 2017, demonstrated a lack of remorse.

Having made these findings, each juror certified that:

> Based upon consideration of whether the aggravating factor or factors found to exist sufficiently outweigh any mitigating factor or factors found to exist, . . . we the jury, by unanimous vote, determine that a sentence of death shall be imposed. . . .

ECF No. 856 and 857, p. 12.

The jury's unanimous verdict of death answers any question as to what twelve reasonable citizens believe the 3553(a) factors call for in this case.[7] And even though the verdict has now

---

[7] It is also worth noting that nothing about Council's Sentry report indicates that his time in custody since his sentencing hearing has resulted in any type of rehabilitation. The report, attached as Exhibit 1, indicates that he has been disciplined for physically and sexually assaultive behavior directed at prison staff on four occasions during his time at USP Terre Haute.

been disturbed by the former-President, the Court should not intervene to further diminish the gravity of Council's offenses by granting him an early release from custody. Doing so would not only constitute a miscarriage of justice but would also further erode the public's confidence in the finality of a jury verdict in the federal courts.

Finally, but importantly, if the Court were to entertain any modification to Council's sentence, the United States respectfully requests that the victims' families be offered an opportunity to be fully heard, in person, on this matter. This Court was careful to protect and honor the victims' rights during the prosecution and sentencing phases of this matter, *see* 18 U.S.C. § 3771, and the Skeen and Major families certainly deserve to be heard again should the Court now decide to further diminish the jury's unanimous decision that Council should be executed.

## CONCLUSION

For these reasons, the Court should summarily deny the defendant's motion for compassionate release.

Respectfully submitted,

ADAIR F. BOROUGHS
UNITED STATES ATTORNEY

BY:    s/ *Everett E. McMillian*
       Everett E. McMillian (Fed. Id. 11791)
       Assistant U.S. Attorney
       401 W. Evans Street, Suite 222
       Florence, SC 29501
       (843) 667-3991
       Everett.McMillian@usdoj.gov

February 3, 2025
Florence, South Carolina

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CRIMINAL NO.: 4:17-cr-866 |
| vs. | |
| BRANDON MICHAEL COUNCIL, | **CERTIFICATE OF SERVICE** |
| Defendant. | |

The undersigned hereby certifies that he, as attorney of record, has caused an employee in the Office of the United States Attorney for the District of South Carolina, on February 3, 2025, to serve a copy of United States' Response in Opposition to Defendant's Motion for Compassionate Release by placing copies in postage-paid envelopes to the individual listed below:

Brandon Michael Council
BOP # 63961-056
USP Terre Haute
US Penitentiary
P.O. Box 33
Terre Haute, IN 47808

s/ Everett E. McMillian
Everett E. McMillian
Assistant U.S. Attorney